UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TRANSATLANTIC, LLC,

    Plaintiff,

v.                               CASE NO. 8:13-CV-1925-T-17TBM

HUMANA, INC.,
et al.,

    Defendants.

_____/

ORDER

This cause is before the Court on:

Dkt. 3    Motion for Temporary Restraining Order
Dkt. 4    Declaration
Dkt. 22  Response
Dkt. 23  Declaration
Dkt. 24  Affidavit
Dkt. 25  Notice
Dkt. 26  Notice
Dkt. 27  Notice
Dkt. 28  Notice

Plaintiff Transatlantic, LLC moves for a Temporary Restraining Order pursuant to the All Writs Act, 28 U.S.C. Sec. 1651. (Dkt. 3). A hearing was previously conducted, and a Status Quo Order was entered. (Dkts. 11, 13). This case was reassigned to the undersigned, and an additional hearing was conducted on August 1, 2013.

The Complaint (Dkt. 1) includes the following claims:

Count I     Declaratory Judgment
Count II    Accounting
Count III   Breach of Contract

Case no. 8:13-CV-1925-T-17TBM

Count IV    Interference with Contract and Economic Opportunity
Count V     Deprivation of Property Without Due Process
Count VI    Injunctive Relief

I. Standard of Review

The Court's authority under the All Writs Act is to be used sparingly and only in the most critical and exigent circumstances. It is only appropriately exercised where: 1) "Necessary or appropriate in aid of jurisdiction," 28 U.S.C. Sec. 1651(a), and 2) the legal rights at issue are "indisputably clear," Brown v. Gilmore, 535 U.S. 1301, 1303 (2001). Wisconsin Right to Life, Inc. v. Federal Election Com'n, 542 U.S. 1305, 1306 (2004).

A district court may grant injunctive relief if the movant shows the following: 1) substantial likelihood of success on the merits; 2) irreparable injury will be suffered unless the injunction issues; 3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and 4) if issued, the injunction would not be adverse to the public interest. Siegel v. Lepore, 234 F.3d 1163, 1174-79 (11th Cir. 2000)(citations omitted). In this Circuit, "[a] preliminary injunction is an extraordinary and drastic remedy not be granted unless the movant clearly establishes the 'burden of persuasion'" as to each of the four prerequisites. Id.

II. Background

Defendant Humana (collectively, all Defendants) is a "Medicare Advantage organization." The Medicare Advantage program was added to Part C of the Medicare Act in 1997. Under the Medicare Advantage program, instead of delegating benefit administration to HMO's, the Government contracts with the HMO's to provide coverage to Medicare enrollees. The Government pays the HMO a fixed amount for each enrollee insured by the HMO and the HMO is then responsible for paying for any services these enrollees receive.

Case no. 8:13-CV-1925-T-17TBM

Plaintiff Transatlantic is a "Managed Service Organization" ("MSO")/'Independent Practitioners Association ("IPA") who has contracts with other MSOs, Physician Practices and Physician Groups.  On February 6, 2006, Plaintiff Transatlantic, LLC entered into an Independent Practice Participation Agreement ("IPA Agreement") with Defendant Humana.  All groups are contractually bound to the terms and conditions established by MAO Humana's contract with the Center for Medicare and Medicaid Services ("CMS"), Medicare's statutes and regulations and such other contract terms as are consistent with the Medicare program, and laws and Constitution of the United States.

In March, 2013, Plaintiff notified Defendant that Plaintiff violated Medicare regulations.  Defendant Humana and Plaintiff entered in to a Corrective Action Plan ("CAP") on April 25, 2013.  Defendant Humana investigated Plaintiff's violations of Medicare regulations, and on June 24, 2013 Defendant Humana terminated the IPA contract with Plaintiff Transatlantic, LLC  by a Mutual Consent Agreement.  (Dkt. 1-7).  On June 25, 2013, Plaintiff appealed to Defendant Humana to reverse the termination. On July 1, 2013, Defendant Humana denied the appeal, based on Plaintiff's consent to the termination.

Plaintiff Transatlantic, LLC commenced this case on July 25, 2013.

III. Discussion

In Count VI of the Complaint, Plaintiff alleges that Defendant terminated the IPA Agreement in retaliation for Plaintiff's exercise of First Amendment free speech rights, based on Plaintiff's inquiries as to funds due to Plaintiff which Plaintiff alleges Defendant is illegally holding, and other conduct. (Dkt. 1, Pars. 178, 179).  Plaintiff further alleges that Defendant Humana is acting on behalf of and functioning on behalf of CMS as a government entity in implementing its MAO contract, and will assert

3

Case no. 8:13-CV-1925-T-17TBM

immunity if Plaintiff seeks a money judgment for damages.

Defendant responds that Defendant is not a government actor, and constitutional claims cannot be maintained against a private actor.

Under limited circumstances, conduct by nominally private actors can be characterized as governmental action for constitutional purposes. However, the limited exceptions are not present in this case. Neither government regulation nor government funding, standing alone, convert a private entity into an arm of the state. See Gonzalez-Maldonado v. MMM Healthcare, Inc., 693 F.3d 244, 250 (1st Cir. 2012)

The Court notes that the IPA Agreement required Plaintiff's compliance with applicable state and federal laws, rules and regulations, and provided that Humana may terminate the Agreement immediately if the IPA violates the provisions of the applicable laws. (Dkt. 1-13, Par. 34.3). Plaintiff admitted Plaintiff's violation of Medicare regulations. Even if the Court assumes that Defendant Humana is a governmental actor, it is equally as likely that Plaintiff's IPA Agreement was terminated for "bringing Humana into disrepute" as for retaliation based Plaintiff's exercise of First Amendment rights.

The Court finds that Plaintiff has not met Plaintiff's burden of showing a substantial likelihood of success on the basis of Defendant's alleged retaliation against Plaintiff' for the exercise of Plaintiff's First Amendment rights. Plaintiff did not include a substantive count for retaliation for Plaintiff's exercise of First Amendment rights, but included the allegations of retaliation only to establish the presence of irreparable injury. Plaintiff did not establish the likelihood of success as to the other substantive counts, Counts I through V.

In this Circuit, Plaintiff must establish all of the four prerequisites in order to

Case no. 8:13-CV-1925-T-17TBM

obtain injunctive relief. Because the Court has found that Plaintiff has not met its burden of showing a substantial likelihood of success, the Court finds it is not necessary to specifically address the remaining factors. The Court will deny the Motion for Temporary Restraining Order and will dissolve the previous Order Maintaining Status Quo (Dkt. 13). Accordingly, it is

ORDERED that the Motion for Temporary Restraining Order (Dkt. 3) is **denied**, and the Order Maintaining Status Quo (Dkt. 13) is **dissolved**.

DONE and ORDERED in Chambers, in Tampa, Florida on this 1st day of August, 2013.

ELIZABETH A. KOVACHEVICH
United States District Judge

Copies to:
All parties and counsel of record