# INDEPENDENT PRACTICE ASSOCIATION PARTICIPATION AGREEMENT

## *PARTIES*

This Independent Practice Association Participation Agreement ("Agreement") is made and entered into by and between:

a. TRANSATLANTIC HEALTHCARE, L.L.C., (hereinafter referred to as PPM), an independent practice association licensed and/or organized under the laws of the State of Florida and the principals of said party, all of whom are listed on the attached Ownership Disclosure Statement (Attachment A);AND

b.     Humana Medical Plan, Inc., PCA Health Plans of Florida, Inc. and PCA Family Health Plan, Inc. (health maintenance organizations) and Humana Health Insurance Company of Florida, Inc. (a Florida insurance company) and Humana Insurance Company, Employers Health Insurance Company and PCA Life Insurance Company (insurance companies) and their affiliates who underwrite or administer health plans. All of said companies are collectively referred to in this Agreement as "HUMANA". The joinder of these companies under the designation "HUMANA" shall not be construed as imposing joint responsibility or cross-guarantee between or among HUMANA companies.

## 2.     *RELATIONSHIP*

In performance of the duties and obligations of each of the parties to this Agreement and in regard to any services rendered or performed by either party for covered individuals designated by HUMANA (hereinafter referred to as Members), including but not limited to those individuals covered under HUMANA's Commercial plans, Medicare HMO and POS plans, and other health care benefit plans, under designated HUMANA contracts, and to all individuals covered under designated self-insured employer, employer trust, or other health care benefit contracts whose claims are either administered by HUMANA or where HUMANA administers the provider network for another third party payor issuing and administering the contract, it mutually is understood and agreed that HUMANA and IPA and their respective employees and agents are at all times acting and performing as independent contractors and that neither party nor their respective employees and agents, shall be considered the agent, servant, employee of or joint venturer with the other party. Notice to, or consent from, any third party, including a Member or other physician, shall not be required in order to make any termination or modification of this Agreement effective. IPA is contracting for itself, and as agent for and under authority granted to IPA by each of its physicians (IPA Physicians) employed by or under contract with IPA, unless otherwise agreed to herein, the parties acknowledge and agree that neither IPA nor HUMANA will be liable for the activities of the other nor the agents and employees of the other, including but not limited to, any liabilities, losses, damages, injunctions, suits, actions, fines, penalties, claims or demands of any kind or nature by or on behalf of any person, party or governmental authority arising out of or in connection with: (I) any failure to perform any of the agreements, terms, covenants or conditions of this Agreement; (II) any negligent act or omission or other misconduct; (III) the failure to comply with any applicable laws, rules or regulations; or (IV) any accident, injury or damage to persons or property. IPA acknowledges and shall require IPA Physicians to acknowledge that all patient care and related decisions are the sole responsibility of the IPA Physicians and that HUMANA does not dictate or control IPA Physicians' clinical decisions with respect to the medical care or treatment of Members. This provision shall survive termination of this Agreement, regardless of the cause giving rise to the termination.

EX12 BtsPg 39

BATES PAGE 39

# INDEPENDENT PRACTICE ASSOCIATION PARTICIPATION AGREEMENT

**3.    NO THIRD PARTY BENEFICIARIES**

With the exception of Article 27, the parties have not created and do not intend to create by this Agreement any third party rights under this Agreement, including but not limited to Members. The parties acknowledge and agree that, with the exception of Article 27 of this Agreement, there are no third party beneficiaries to this Agreement.

**4.    SCOPE OF THE AGREEMENT**

4.1     This Agreement sets forth the rights, responsibilities, terms and conditions governing: (I) IPA and IPA Physician's status as a health care provider contracted and credentialed by HUMANA to provide health care services (hereinafter Participating Providers) to Members in certain health care networks established or managed by HUMANA and (II) IPA Physicians' services to Members. This Agreement applies only to those health care benefit contracts and to those Members designated by HUMANA.

4.2     Upon request, HUMANA agrees to provide IPA with a listing of all other agreements under which IPA and IPA Physicians will be providing services as required by this Agreement.

4.3     All rights and responsibilities arising in respect to Members shall be applicable to only the company which issued the contract covering the respective Members and may not be imposed or enforced upon any other affiliated or related company.    Further, with respect to self-insured contracts, unless otherwise indicated, HUMANA's responsibilities are limited to those of administration or claims processing.

4.4     IPA represents and warrants that IPA and all IPA Physicians and their respective members, independent contractors and employees will abide by the terms and conditions of this Agreement, and IPA shall obtain acknowledgment of such from each IPA Physician member, independent contractor and employee required to be credentialed under the terms of this Agreement.

4.5     The parties agree that nothing contained in this Agreement is intended to interfere with or hinder communications between physician(s) and Members regarding patient treatment.

**5.    SUBCONTRACTING PERFORMANCE**

5.1     IPA shall provide directly, or through appropriate arrangement with IPA Physicians and other providers of medical services, medical services to Members. It is understood and agreed that said IPA shall maintain written agreements with the IPA Physicians, and other licensed providers of medical care where applicable, in a form comparable to, and consistent with, the terms and conditions established in this Agreement, and in a form approved by HUMANA. A sample copy of the agreement between IPA and IPA Physicians in effect at the time of the signing of this Agreement is attached in Attachment I. In the event of a conflict between the language of the IPA Physician agreements and this Agreement, the language in this Agreement shall control. IPA agrees to notify HUMANA of any material change(s) to the aforementioned agreements at least thirty (30) days prior to implementing such change(s), during which period, HUMANA may object to the change(s). HUMANA's notice of objection shall not preclude IPA's implementation of such change(s), but IPA agrees that any such change(s) shall not be contrary to, in violation of, or inconsistent with the terms of this Agreement. In the event HUMANA notifies IPA of its objection, both parties agree to make a good faith effort to resolve such dispute in a timely manner.

**IPA-SR-FL/5-98**

3

# INDEPENDENT PRACTICE ASSOCIATION PARTICIPATION AGREEMENT

**5.2**  All IPA Physicians and other providers of medical services providing services to HUMANA Members shall be subject to HUMANA's credentialing process prior to receiving status as a HUMANA Participating Provider.

**5.3**  IPA represents and warrants that it is authorized to negotiate terms and conditions of physician agreements and further to execute such agreements for and on behalf of IPA Physicians.

**5.4**  Upon request, IPA agrees to disclose to HUMANA within a reasonable time period not to exceed thirty (30) days, or such lesser period of time required for HUMANA to comply with all applicable state and federal laws, rules and regulations, from such request, all of the terms and conditions of any payment arrangement that constitutes a physician incentive plan as defined by Health Care Financing Administration (HCFA) and/or any state or federal law, between IPA and IPA Physicians. Such disclosure shall be in the form of a certification, or other form as required by HCFA, by IPA and shall identify, at a minimum; (I) whether services not furnished by the IPA Physician(s) are included; (II) the type of incentive plan, including the amount, identified as a percentage, of any withhold or bonus; (III) the amount and type of any stop-loss coverage provided for or required of the IPA Physicians and (IV) the IPA Physician(s) patient panel size, broken down by total IPA Physicians panel and individual IPA Physician panel size, by the type of insurance coverage (i.e. Commercial HMO, Medicare HMO and Medicaid HMO).

**5.5**  IPA shall have, for the term of this Agreement, agreements with licensed providers of medical services that: (I) shall be in writing and on contract forms approved by HUMANA; and (II) shall include terms and conditions which comply with all applicable requirements for provider agreements under state and federal laws, rules and regulations; and (III) shall appoint HUMANA as the IPA's authorized agent for the payment of claims for Covered Services rendered to HUMANA Members submitted by such licensed providers and (IV) shall contain provisions for holding HUMANA harmless from and against any and all disputes between such licensed providers and HUMANA concerning the adjudication and the amount of the payment of the claims to the extent HUMANA relies on IPA's adjudication of such claims submitted for Covered Services rendered to HUMANA Members. In addition, from and after the Effective Date hereof, agreements with Independent contractor IPA Physicians shall contain a provision to extend automatically at HUMANA's election the terms of such agreements to HUMANA in the event that this Agreement terminates for any reason for the lesser of the remaining term of such agreements or one (1) year.

**5.6**  In the event IPA acquires, through an asset acquisition, merger, consolidation, lease or other means, or enters into a management agreement to manage the practice of physician(s) or physician groups in ____Tampa Market, and such practices or groups have in effect an agreement with HUMANA to provide medical services to HUMANA Members on a capitated, percentage of premium or other risk sharing basis at rates which are more favorable to HUMANA than those contained herein, the rates contained herein shall be adjusted to reflect a blended rate by product weighted by the relative number of Members at the newly acquired or managed practice(s); provided, however, such blended rate shall in no event result in an increase in the total funding by HUMANA to IPA hereunder regardless of whether the newly acquired practice's reimbursement from HUMANA is more favorable or not.

EX12 BtsPg 41

BATES PAGE 41

# INDEPENDENT PRACTICE ASSOCIATION PARTICIPATION AGREEMENT

5.7    In the event that a IPA Physician is a party to more than one agreement with HUMANA for the provision of medical services to Members, IPA or IPA Physician will be reimbursed for Covered Services by HUMANA under the agreement selected by HUMANA. However, in the event that a physician affiliated with IPA declines participation under this Agreement prior to the execution of this Agreement, to the extent physician is a party to another agreement with HUMANA, reimbursement for the provision of Covered Services to Members shall be in accordance with such other agreement between HUMANA and the physician.

6.    **LIQUIDATED DAMAGES**

IPA acknowledges and shall require IPA Physicians to acknowledge that HUMANA has invested and will invest substantial resources including funds, time, effort and goodwill in building a roll of Medicare Members to be treated by IPA Physicians. Therefore, IPA agrees that IPA and IPA Physicians, or any of IPA or IPA Physicians' employees, principals or financially related entities, shall not solicit, persuade, induce, coerce or otherwise cause the disenrollment of any Medicare Member at any time, directly or indirectly. If thirty-five (35) or more Medicare Members assigned to an individual IPA Physician disenroll from HUMANA due to IPA or IPA Physicians' directly or indirectly soliciting, persuading, inducing, coercing or otherwise causing the disenrollment of such Medicare Members to be treated by IPA or any of IPA Physicians or IPA/IPA Physicians' employees, principals or other financially related entity under some other prepaid health care benefit plan other than HUMANA's, IPA shall pay HUMANA the amount of three thousand dollars ($3,000.00) for each disenrolled Medicare Member who is treated by IPA, or any of IPA Physicians, or IPA/IPA Physicians' employees, principals or any financially related entity. IPA hereby agrees and shall require IPA Physicians hereby to agree that this amount is not a penalty and constitutes liquidated damages in as much as the actual damages are not and cannot be ascertained at the time of the execution of this Agreement. IPA and IPA Physicians understand that this liquidated damages clause does not apply to or require payment from the Medicare Members under any circumstance. HUMANA agrees with IPA and IPA Physicians that this paragraph shall not be applicable in the case of any Medicare Member who disenrolls and is treated by a IPA Physician or anyone else on a non-prepaid and non-capitated fee-for-service basis as a private patient. In addition, Medicare Members who were patients prior to IPA Physician's participation as a HUMANA Participating Provider, are excluded from this provision, if the IPA and/or IPA Physician can furnish documentation to HUMANA in the form of a list of his/her patients prior to becoming a HUMANA Participating Provider. IPA and IPA Physicians have the obligation to and agree to notify HUMANA immediately of the name of any Medicare Member or former Medicare Member treated by a IPA Physician or any other person covered by this provision. This paragraph shall survive for twelve (12) months following the termination or expiration of this Agreement regardless of the cause giving rise to termination.

**IPA-SR-FL/5-98**

6

EX12 BtsPg 42

BATES PAGE 42

# INDEPENDENT PRACTICE ASSOCIATION PARTICIPATION AGREEMENT

## 7. POLICIES AND PROCEDURES

7.1  IPA shall require IPA Physicians to agree to abide by all quality assurance, quality improvement, accreditation, risk management, utilization review, credentialing, recredentialing and other administrative policies and procedures established and revised by HUMANA from time to time, and such other administrative policies and procedures as are set out in the Affiliated Provider Manual and/or the Physician's Administration Manual (Manual) and/or bulletins and manuals that may be promulgated by HUMANA from time to time in order to supplement the Manual, current copies of which hereby are acknowledged as received. IPA shall be notified of any revisions to the policies and procedures and they shall become binding upon IPA and IPA Physicians thirty (30) days after HUMANA has notified IPA. Additionally, HUMANA shall notify IPA of any other revisions to existing policies and procedures, at which time of notice such revisions shall become binding upon IPA and IPA Physicians. Any revisions affecting IPA and/or IPA Physicians shall not be discriminatory and shall apply to all providers similarly situated. IPA Physicians shall notify HUMANA's Pre-Admission Certification department or designated personnel of any inpatient admissions of HUMANA Members as required in the Manual. IPA acknowledges and agrees that such notification shall be prior to the inpatient admission(s) of any HUMANA Members not assigned to IPA Primary Care Physicians.

7.2  IPA further agrees, in accordance with the Letter of Agreement to be signed by each IPA Physician, an example of which appears in Attachment H, that IPA and HUMANA may share information, including but not limited to credentialing, recredentialing, quality management and utilization management information as related to the treatment of Members. However, it expressly is understood that the information shall not be shared with anyone other than HUMANA and IPA, unless required by law or pursuant to prior written consent of the IPA Physician involved.

7.3  IPA acknowledges and agrees that a signed Letter of Agreement, (in a form substantially similar to that form attached hereto as Attachment H), for each IPA Physician participating under this Agreement shall be provided to HUMANA prior to execution of this Agreement, and prior to the provision of services to HUMANA Members for those IPA Physicians who join IPA and are approved by HUMANA and agree to participate under this Agreement and/or whose credentialing applications are approved subsequent to execution of this Agreement. Notwithstanding the above, IPA acknowledges and agrees that IPA shall sign the Letter of Agreement on behalf of those IPA Physicians that are employed by IPA, and all other IPA Physicians shall sign a Letter of Agreement on an individual basis. IPA Physicians who do not execute such Letter of Agreement shall not be entitled to participate under this Agreement and will not be listed in HUMANA's provider directories.

7.4  All administrative services, including but not limited to credentialing, recredentialing, utilization management, quality assurance and fiscal services, shall be performed by HUMANA. However, HUMANA in its sole discretion will discuss with IPA, IPA's provision of such services at such time as IPA may demonstrate administrative or information service capabilities acceptable to HUMANA.

EX12 BtsPg 43

BATES PAGE 43

# INDEPENDENT PRACTICE ASSOCIATION PARTICIPATION AGREEMENT

## 8. CREDENTIALING

**8.1**     All IPA Physicians who will provide medical services to Members hereunder are required to be credentialed, and shall be subject to the credentialing process prior to receiving status as a HUMANA Participating Provider.

**8.2**     Participation under this Agreement by IPA, and each of its IPA Physicians, is subject to the satisfaction and maintenance, in HUMANA's sole judgement, of all credentialing and recredentialing standards established by HUMANA's credentialing and/or medical affairs departments and adopted under the policies and procedures set out in the Manual and other rules and regulations promulgated thereby. IPA and/or IPA Physicians shall provide HUMANA with the information necessary to ensure compliance with this Article 8 at no additional expense to HUMANA and/or any vendor to whom HUMANA at its sole discretion, may delegate the credentialing and/or recredentialing process(es) to.

**8.3**     HUMANA reserves the right to approve new IPA Physicians and/or, as applicable, other health care providers required to be credentialed, or to terminate or suspend any IPA Physician or, other health care providers required to be credentialed, who will be or is providing care to HUMANA Members, who does not meet or fails to maintain HUMANA'S credentialing and/or recredentialing standards. HUMANA agrees to notify IPA of its decision to terminate any IPA Physician or any other IPA health care provider required to be credentialed under HUMANA standards and, except in cases of immediate terminations, IPA shall have fourteen (14) days from such notice to request reconsideration of such decision by HUMANA's Medical Director. However, IPA acknowledges and agrees that HUMANA shall have the final decision on the matter. IPA further acknowledges and agrees and shall require IPA Physicians further to acknowledge and agree that any limitation and/or suspension and/or termination of his/her credentialing or recredentialing status by HUMANA or any one or more of HUMANA's affiliates shall apply uniformly to IPA Physician(s) credentialing or recredentialing status with HUMANA and all of its affiliates. In the event the limitation, suspension and/or termination is for administrative reasons, HUMANA or any of its affiliates may elect to reject the administrative action of the acting HUMANA entity's determination.

## 9. LICENSURE/CERTIFICATION

**9.1**     IPA shall require IPA Physicians, and all employees of IPA and/or IPA Physicians required to be so licensed or certified, to procure and maintain for the term of this Agreement such licensure and/or certification as is required under HUMANAC)s policies and procedures, under the terms and conditions of this Agreement, in compliance with the provisions in the Manual, and in accordance with all applicable state and federal laws. IPA shall and/or shall require IPA Physicians to notify HUMANA immediately of any changes in licensure or certification status of IPA Physicians, and their employees as applicable.

**9.2**     IPA represents and warrants that it has obtained and shall maintain any and all licenses, certificates and/or approvals required under Florida and/or federal laws, rules and regulations, for the performance by IPA of its duties and obligations under this Agreement. Further, IPA shall maintain a valid Florida Third Party Administrator's License during the term of this Agreement, where IPA is required to do so.

EX12 BtsPg 44

BATES PAGE 44

## INDEPENDENT PRACTICE ASSOCIATION PARTICIPATION AGREEMENT

**10.    MEDICAL SERVICES TO BE PROVIDED**

**10.1**    IPA on behalf of itself and IPA Physicians, desires to become a Participating Provider under the terms of this Agreement and agrees to provide and/or arrange for health care services for Members, in accordance with this Agreement and the applicable Member health benefits contract (hereinafter Covered Services).    IPA Physicians' responsibilities for providing and/or arranging Covered Services to Members at the locations listed in Attachment C are set forth in the Attachment D.

IPA shall provide HUMANA with at least sixty (60) days prior written notice of an proposed changes in the locations or the proposed closing by IPA or IPA Physician(s) of any practice listed in Attachment C and any such change or closing shall be subject to HUMANA's approval, which shall not unreasonably be withheld. Failure to obtain HUMANA's prior approval may result, at HUMANA's sole and complete discretion, in the termination of such IPA Physician(s) and/or office sites from participation under this Agreement.

**10.2**    In the event IPA and/or IPA Physician(s) dispute what services are covered under the applicable health care benefits plan contract, the Medical Directors of HUMANA and IPA shall make reasonable efforts to resolve such disputes. However, IPA agrees that HUMANA shall have sole and final authority to interpret and determine what services and/or benefits are covered under the applicable health care benefits contract.

**11.    STANDARDS OF PROFESSIONAL PRACTICE**

**11.1**    IPA agrees to require IPA Physicians to provide Members with medical services which are within the normal scope of IPA Physicians' medical practices. These services shall be made available to Members without discrimination on the basis of health care benefit plan, source of payment, sex, age, race, color, religion, national origin, health status or other handicap, and in the same manner as provided to IPA Physicians' other patients. IPA agrees to require that IPA Physicians provide medical services to Members in accordance with the prevailing practices and standards of the profession.

**1.2**    IPA understands and agrees and shall require IPA Physicians to agree that HUMANA may deny payment(s) for medical services rendered to Members which are, in the opinion of HUMANA, determined not to be medically necessary. Medically Necessary (or "Medical Necessity") shall mean services or supplies provided by a hospital, physician or other health care provider, licensed by the appropriate state agency, or as otherwise approved as required, to diagnose or treat a condition, disease, ailment, sickness or bodily injury and which, in the opinion of HUMANA, are: (I) consistent with the symptoms, diagnosis and treatment of such condition, disease, ailment, sickness or bodily injury; (II) appropriate with regard to standards of accepted medical practice; (III) not primarily for the convenience of the patient or the qualified hospital, physician or other health care provider; (IV) the most appropriate and cost-effective supply, setting, or level of service which safely can be provided to the patient and (V) substantiated by the records and documentation maintained by the provider of services. When applied to an inpatient, it further means that the patient's symptoms or condition requires that the services or supplies cannot safely be provided to the patient as an outpatient. Any disputes regarding Medical Necessity shall be handled in accordance with Section 10.2 of this Agreement.

EX12 BtsPg 45

BATES PAGE 45

# INDEPENDENT PRACTICE ASSOCIATION PARTICIPATION AGREEMENT

**11.3** HUMANA may authorize payment for Medically Necessary Covered Services for Members based on HUMANA's discretion and in accordance with the applicable Member health care benefits contract. Such services shall be paid for as if authorized by IPA and/or IPA Physicians and in accordance with the applicable payment arrangements outlined herein. In the event HUMANA so authorizes payment for Medically Necessary Covered Services, HUMANA agrees to notify IPA concurrently of such authorization.

## 12. USE OF PARTICIPATING PROVIDERS

**12.1** Except in the case of a medical emergency, IPA shall require IPA Physicians to admit, refer and cooperate with the transfer of Members for Covered Services only to providers designated, specifically approved or under contract with HUMANA.

**12.2** In the event that a IPA Physician provides a Member non-covered services or refers a Member to an out-of-network provider without pre-authorization from HUMANA, IPA shall require IPA Physicians prior to the provision of such non-covered services or such out-of-network referral, to inform the Member: (I) of the services to be provided or referral to be made; (II) that HUMANA will not pay (or may pay a reduced benefit in the case of HUMANA's point of service (POS) and/or preferred provider organization (PPO) products) or be liable financially for such non-covered service or out-of-network referral and (III) that Member will be responsible financially for non-covered service(s) and/or out-of-network(s) referral that are requested by the Member. IPA acknowledges and agrees and shall require IPA Physicians to acknowledge and agree that the failure to inform Member(s) in accordance with this Section 12.2 may result in the IPA's and/or IPA Physician's responsibility and financial liability for the cost of such non-covered service(s) and/or out-of-network referral incurred by HUMANA.

## 13. EQUAL ACCESS

IPA agrees and shall require IPA Physician(s) to agree to accept HUMANA Members as patients within the normal scope of IPA Physicians' medical practices. If for any reason, IPA Physician(s), individually and/or collectively, close their practice(s), such closure will apply to all prospective patients without discrimination or regard to payor or source of payment for services. Should IPA Physician(s) subsequently re-open their practices to new patients, IPA agrees and shall require IPA Physician(s) to agree to accept HUMANA Members as patients are accepted to the same extent non-HUMANA patients seeking IPA Physician(s) services. Notwithstanding the above, any such closure of an IPA Physician(s) practice to new patients is subject to the limitation outlined in Section 10.1 and Attachment D of this Agreement.

## 14. IPA PHYSICIAN FACILITIES

IPA Physicians will establish and maintain regular business hours for the provision of services to HUMANA Members. In establishing business hours, IPA and IPA Physicians shall take into consideration the number and type of Members assigned to and/or receiving services at the office site. The business hours established by IPA and IPA Physicians are noted in Attachment C of this Agreement. This does not relieve IPA Physicians of their obligation to provide medical coverage for Members twenty-four (24) hours a day, seven (7) days a week.

EX12 BtsPg 46

BATES PAGE 46

# INDEPENDENT PRACTICE ASSOCIATION PARTICIPATION AGREEMENT

## 15. SOFTWARE USE

IPA and/or IPA Physicians may use certain software as may be identified by HUMANA that is licensed to HUMANA and/or its subsidiaries, parent and/or affiliates. Such use is conditioned upon IPA and IPA Physicians' strict compliance with the HUMANA Security Guidelines, and upon use solely as indicated by HUMANA, and treatment of the software as confidential property of HUMANA's licensor and not subject to disclosure to third parties without the prior written consent of HUMANA. Such prohibition on disclosure shall not apply to disclosures to IPA's and/or IPA Physicians' employees provided the disclosure reasonably is necessary to use the software, and provided IPA and IPA Physicians take all reasonable steps to ensure the software is not duplicated or disclosed to third parties. If IPA and/or IPA Physicians become aware of an unauthorized use, duplication or disclosure, IPA and/or IPA Physicians shall provide full details to HUMANA promptly and take all reasonable steps to prevent any such recurrence. Upon request by HUMANA, IPA and/or IPA Physicians shall return to HUMANA all copies of the software, purge all machine readable media relating to such software and certify to HUMANA that the foregoing duties have been performed. These obligations of confidentiality, non-disclosure, non-reproduction and return of material shall survive any termination or expiration of this Agreement.

## 16. IPA AND IPA PHYSICIANS INSURANCE

16.1    At all times, IPA will maintain and will require each IPA Physician to maintain, at no expense to HUMANA, such policies of comprehensive general liability, professional liability and workers' compensation coverage, with such carriers and in such amounts as HUMANA reasonably may approve, insuring IPA and each IPA Physician, their officers, directors, members, employees, agents and subcontractors (as applicable), against any claim or claims for damages arising as a result of injury to property or person including death, occasioned directly or indirectly, in connection with the performance of medical services contemplated by this Agreement and/or the maintenance of IPA and/or IPA Physicians' facilities and equipment. Prior to execution of this Agreement, and at any time subsequently upon request, IPA and IPA Physicians shall provide HUMANA with evidence of said coverage, of which minimum professional liability coverage for IPA shall be one million dollars ($1,000,000.00) and for each IPA Physician shall be two hundred fifty thousand dollars ($250,000.00) per occurrence/seven hundred fifty thousands dollars ($750,000.00) in the aggregate, or such amount as required by state law, whichever is greater. IPA shall provide and/or shall require IPA Physicians to provide, or shall require the carrier(s) to provide, HUMANA with ten (10) days prior written notice of any suspensions, cancellations of, or modifications in the coverage. This clause shall survive the expiration and/or termination of this Agreement, regardless of the cause, for a period of time not less than the applicable Statute of Limitations in this State.

16.2    IPA agrees to cooperate with HUMANA in assuring that any stop-loss coverage required by law is made available. IPA agrees and shall require IPA Physicians to agree that compensation received from HUMANA shall be adjusted by the cost of any stop-loss coverage which HUMANA may be required by law to provide.

EX12 BtsPg 47

BATES PAGE 47

## INDEPENDENT PRACTICE ASSOCIATION PARTICIPATION AGREEMENT

**17.** **HUMANA INSURANCE**

At all times, HUMANA will maintain such policies of comprehensive general liability insurance and other insurance or self insurance, as shall be necessary to insure HUMANA against any claim or claims for damages arising in connection with the performance of HUMANA's responsibilities under this Agreement. If requested by IPA, HUMANA shall provide IPA evidence of such coverage upon execution of this Agreement and thereafter at reasonable intervals as requested by IPA during the term of this Agreement. This clause shall survive for a period of time not less than the applicable Statute of Limitations in this state.

**18.** **MEDICAL RECORDS**

**18.1** IPA shall require IPA Physicians to prepare, maintain and retain records relating to Members in such form and for such time periods as required by applicable state and federal laws, licensing, accreditation and reimbursement rules and regulations to which HUMANA is subject, and in accordance with accepted medical practice and HUMANA standards. HUMANA, pursuant to authorization of the Member signed at time of enrollment during the application process, the sufficiency of which hereby is acknowledged, or any federal or state regulatory agency, as permitted by law, may obtain, copy and have access, upon reasonable request, to any medical, administrative or financial record of IPA and/or IPA Physicians related to Covered Services provided by IPA Physicians to any HUMANA Member. Copies of such records shall be at no additional cost to HUMANA or the Member.

**18.2** Upon request from Humana or a Member, IPA agrees and shall require IPA Physicians to agree to transfer the complete original or a complete acceptable copy of the medical records of any Member to another physician or provider for any reason, including termination of this Agreement. The transfer of medical records shall be at no cost to either HUMANA or the Member and shall be made within a reasonable time following the request but in no event less than five (5) business days except in cases of emergency. IPA agrees and shall require IPA Physicians to agree that such timely transfer of medical records is necessary to ensure the continuity of care for Members. IPA agrees to pay court costs and/or legal fees necessary for HUMANA to enforce the terms of this provision.

**18.3** IPA, IPA Physicians and HUMANA agree to maintain the confidentiality of information contained in the medical records of Members.

**18.4** This Article 18 shall survive termination of this Agreement, regardless of the cause for such termination.

**19.** **MALPRACTICE CLAIMS**

IPA shall require IPA Physicians to notify HUMANA in writing within forty-eight (48) hours or such lesser period of time as required by the applicable statute of this State of any Member claim alleging malpractice or the occurrence of any incident involving a Member which may result in legal action.

EX12 BtsPg 48

BATES PAGE 48

# INDEPENDENT PRACTICE ASSOCIATION PARTICIPATION AGREEMENT

## 20. GRIEVANCE AND APPEALS PROCESS

IPA agrees and shall require IPA Physicians to agree to cooperate and participate with HUMANA in its grievance and appeals processes to resolve disputes which may arise between HUMANA and IPA/IPA Physicians and/or HUMANA and it Members. IPA shall comply and shall require IPA Physicians to comply with all final determinations made through the grievance and appeals processes.

## 21. USE OF IPA AND IPA PHYSICIANS' NAME

**21.1**  HUMANA shall have the right to include the following information in any and all marketing and administrative materials it distributes: IPA and IPA Physicians' names, telephone numbers, addresses, hours of operation and types of practices or specialties, and the names of all physicians and physician extenders providing care at IPA Physicians' facilities. HUMANA shall provide IPA with copies of any such administrative or marketing materials upon request.

**21.2**  Neither party shall advertise nor utilize any marketing materials, logos, trade names, service marks or other materials belonging to the other party without its prior written consent. Neither party shall acquire any right or title in or to the marketing materials, logos, trade names, service marks or other materials of the other.

**21.3** IPA agrees and shall require IPA Physicians to agree to: (I) allow HUMANA to place HUMANA signage and/or brochures, excluding any applications, in IPA Physicians' offices; (II) mail an announcement of IPA and IPA Physicians new affiliation with HUMANA to their patients; (III) furnish HUMANA with a complete list of the names and addresses of IPA's or IPA Physicians' patients in the event IPA or IPA Physicians provide such patient list to another payor and (IV) cooperate on a regular basis, to the extent permitted under applicable state and federal laws, rules and regulations, in joint marketing activities. IPA acknowledges and agrees and shall require IPA Physicians to acknowledge and agree that any communications between IPA and/or IPA Physicians and Medicare Members which describe any HUMANA Medicare product in any way requires the prior written approval of HUMANA and HCFA.

## 22. PAYMENT ARRANGEMENT

**22.1**  HUMANA shall pay IPA or IPA Physicians, as applicable, in accordance with the IPA and IPA Physician Reimbursement described in Attachment E. IPA shall collect or shall require IPA Physicians to collect the payments owed by Members pursuant to their health benefits contract, including but not limited to copayments, deductibles, coinsurance and/or cost-share amounts (hereinafter referred to as Copayments)required directly from the Member, and shall not waive, discount or rebate any such Copayment. The payment from HUMANA, plus any Copayments due from Members, shall be accepted by IPA and at IPA's direction by IPA Physicians as payment in full for all Covered Services.

**22.2**  HUMANA shall have the right to conduct, or have conducted by a third party, audits and evaluations from time to time of all billing and financial records of IPA and/or IPA Physicians related to medical services provided to HUMANA Members. IPA shall allow HUMANA or its designee access to IPA's billing and financial records and those of IPA Physicians to conduct the audits and evaluations.

EX12 BtsPg 49

BATES PAGE 49

## INDEPENDENT PRACTICE ASSOCIATION PARTICIPATION AGREEMENT

**22.3** Notwithstanding anything to the contrary identified herein, IPA or IPA Physicians, as applicable, have the right to dispute reimbursement of a claim for a period of up to six (6) months from the date such claim was paid by HUMANA or the end of the final Accounting Period, as defined in Attachment E of this Agreement, whichever is less. In the event of such a dispute, the parties agree to work toward a mutually agreeable resolution of such dispute. IPA shall provide at a minimum the following information if the IPA or a IPA Physician contests the payment of a claim as set out herein: Member name and identification number, date of service, relationship of the Member-patient to the Member who completed the application for health care benefits coverage with HUMANA, claim number, name of the provider of medical services, charge amount, payment amount, the allegedly correct payment amount, difference between the amount paid and the allegedly correct payment amount and a brief explanation of the basis for the contestation. HUMANA will review such contestation(s) and respond to IPA within sixty (60) days of the date of receipt by HUMANA of such contestation. The parties acknowledge and agree that HUMANA's decision on the matter will be final. Failure to contest the amount of any claim paid hereunder within the time specified above shall result in the waiver of IPA's and IPA Physicians', where applicable, right to contest such claims amount distributed.

**22.4** IPA agrees and shall require IPA Physicians to agree to accept as payment in full for Covered Services provided to Members not assigned to a IPA Physician and who receive Covered Services from a IPA Physician(s) the reimbursements outlined in Attachment E of the Agreement. Further, in the event that Members assigned to IPA Physicians receive services and/or treatment at another facility or from another physician or health care provider, payment for such services and/or treatment shall be in accordance with the contracted rates with such other facility, physician or other health care provider, to the extent such a contract exists between HUMANA and such other facility, physician or other health care provider.

**22.5** Further, IPA acknowledges and agrees and shall require IPA Physicians to acknowledge and agree that HUMANA may deny payment of medical services rendered to Members, which are determined not to be Medically Necessary by HUMANA. IPA agrees and shall require IPA Physicians to agree that in the event of a denial of payment for services rendered to Members that are determined not to be Medically Necessary, IPA shall not and shall require IPA Physicians to agree not to bill, charge, seek payment or have any recourse against Members or persons other than HUMANA acting on their behalf for medical services provided pursuant to this Agreement.

## 23. BILLING/ENCOUNTER PROCEDURES

**23.1** IPA shall and/or shall require IPA Physicians to prepare and submit to HUMANA, according to billing procedures established by HUMANA, billing and/or encounter information for Members who have received Covered Services. IPA shall require IPA Physicians to use the standard billing and encounter forms required or agreed to by HUMANA.

EX12 BtsPg 50

BATES PAGE 50

# INDEPENDENT PRACTICE ASSOCIATION PARTICIPATION AGREEMENT

**23.2** IPA shall require IPA Physicians and IPA affiliated health care providers to submit all claims and encounters to HUMANA electronically by means available and accepted as industry standards that are mutually agreeable, which may include claims clearinghouses, or IMS-Medacom, or other technology that is mutually agreed upon by HUMANA and IPA, and in accordance with published HUMANA claims policies, procedures and guidelines on the earlier of the Effective Date of this Agreement or six (6) months following execution of this Agreement. Should IPA and/or IPA Physicians be unable to submit claims electronically upon execution of this Agreement, IPA and/or IPA Physicians shall make such arrangements as may be necessary, at their sole expense, to do so within six (6) months from the date of execution of this Agreement. For purposes of this Agreement, claims shall be defined as notification to an insurance or managed health care company that payment of an amount is due under the terms of this Agreement and in accordance with the applicable Member health benefits contract.

**23.3** Should IPA and/or IPA Physicians fail to comply with the terms of Section 23.2 above, HUMANA may, at its sole discretion pend payment of monies to IPA and/or IPA Physicians until completed claims are submitted electronically. In no event will HUMANA's Members be responsible for monies in addition to those Copayments due under the applicable Member health care benefits contract.

**23.4** IPA agrees and shall require IPA Physicians to agree to submit all fee-for-service claims eligible for reimbursement as provided under this Agreement within sixty (60) days from the date of service. HUMANA may, at its sole discretion, deny payment for any such fee-for-service claim(s) received after sixty (60) days from the date of service. IPA acknowledges and agrees and shall require IPA Physicians to acknowledge and agree that at no time shall HUMANA's Members be responsible for any payments in addition to applicable Copayments for Covered Services provided to such Members. In the event the penalty described herein is effected, the Member's Copayment, if any, shall be adjusted accordingly.

**23.5** In the event that IPA or IPA Physician(s), as applicable, are reimbursed for Covered Services on a capitated basis, and no claims for services are submitted to HUMANA at the time of service, IPA agrees and shall require IPA Physicians to agree to provide HUMANA accurate and complete information ("Encounter Data") regarding the provision of Covered Services for Members in a form mutually to be agreed upon by both parties. Encounter Data shall include at a minimum Member identification and demographic information, IPA and/or IPA Physician tax identification number, date of service, all applicable CPT-4 and ICD-9 codes, and where applicable billed charges.

**23.6** IPA acknowledges and agrees, and shall require IPA Physicians to acknowledge and agree, that such Encounter Data shall be provided to HUMANA on a monthly basis on or before the last day of each month for encounters occurring in the immediately preceding month. In the event IPA and/or IPA Physicians fail to provide, or arrange for the provision of, the Encounter Data by the date specified above, and upon HUMANA's notice to IPA of such failure, IPA shall have thirty (30) days from the date of said notice to develop a corrective action plan acceptable to HUMANA to insure compliance with the timely submission of the Encounter Data. In the event the corrective action plan is unacceptable to HUMANA, or the plan fails to correct the problem within sixty (60) days of implementation of the corrective action plan, HUMANA, at its sole discretion, may: (I) withhold IPA's and/or IPA Physicians', as applicable, subsequent payments or (II) pend such payments until such Encounter Data is submitted to HUMANA in an acceptable form, or (III) terminate this Agreement upon at least sixty (60) days written notice to IPA.

EX12 BtsPg 51

BATES PAGE 51

# INDEPENDENT PRACTICE ASSOCIATION PARTICIPATION AGREEMENT

**23.7**    IPA shall and shall require all IPA Physicians to use the most current procedural technology (CPT) codes on all forms. IPA and/or IPA Physicians will abide by all CPT code rules and guidelines that are applicable (including inclusive procedure codes).

**23.8**    HUMANA will deduct from payments to IPA or IPA Physician(s), as applicable, the cost of any non-covered service and Copayment amounts required by the applicable HUMANA Member health benefits contract. Amounts deducted for non-covered services and Copayments will be determined on the basis of the applicable Member health benefits contract.

**24.**    *OFF-SET*

**24.1**    IPA shall be notified in writing by HUMANA of any monies IPA or IPA Physician(s) may owe HUMANA, for any reason, and IPA shall have thirty (30) days from receipt of such notification to refund monies owed to HUMANA. If there is a dispute as to monies owed to HUMANA, IPA shall provide a written response to HUMANA outlining the specific nature of such dispute within such thirty (30) day notice period. Notwithstanding the above, IPA authorizes and shall require IPA Physician(s) to authorize HUMANA to deduct monies that otherwise may be due and payable to HUMANA from any outstanding monies that HUMANA, for any reason, may owe to IPA or IPA Physician(s), as applicable.

**24.2**    IPA agrees that HUMANA may make retroactive adjustments to the payment and funding arrangement(s) outlined in the enclosed attachments for changes in enrollment and other business reasons including but not limited to claims payment errors, data entry errors, capitation errors and incorrectly submitted claims.

**25.**    *IPA GUARANTEE*

IPA shall provide HUMANA with a financial guarantee ("Letter of Credit, Reserve Fund, or Cash"), a copy or a methodology of which shall be attached hereto and incorporated herein as Attachment J.

The Financial Guarantee Amount shall be reviewed annually and may be adjusted with Humana's reasonable approval. In the event the Financial Guarantee Amount is to be increased or decreased as a result of the review described above, IPA shall cause to be issued a –new or amended Financial Guarantee to Humana for its written approval. The then current Financial Guarantee shall not expire until such new or amended Financial Guarantee is delivered to Humana and Humana has issued its written approval. In the event that the amount of the Financial Guarantee is not increased by IPA, Humana may immediately draw down the entire amount, or balance thereof, of the Financial Guarantee. In addition, such failure to increase the amount of the the Financial Guarantee shall constitute a default by the IPA under this Agreement, and Humana may thereafter terminate this Agreement effective upon the earlier of the expiration date of the Financial Guarantee until completion of the final settlement under the terms of this Agreement.

EX12 BtsPg 52

BATES PAGE 52

## INDEPENDENT PRACTICE ASSOCIATION PARTICIPATION AGREEMENT

Each Financial Guarantee, and any payment instructions contained therein, shall be in form and substance satisfactory to Humana and in Humana's name, shall be issued for a definite term of not less than one (1) year, shall be irrevocable without no less than ninety (90) days prior written notice to HUMANA from issuer, shall be issued by a company acceptable to Humana, and shall be payable at sight and on demand after the date of issue when accompanied by a written statement signed by an authorized representative of Humana in the form described in the Financial Guarantee.

In the event Humana has received from the issuer the notice of non-renewal or cancellation of the Financial Guarantee, IPA shall have seven (7) business days to obtain a renewal or a replacement Financial Guarantee issued in accordance with the terms hereof. In the event that a renewed or replacement Financial Guarantee is not provided by IPA to Humana within such time period, Humana may immediately draw down the entire amount, or balance thereof, of the Financial Guarantee. In addition, such failure to renew or replace the Financial Guarantee shall constitute a default by IPA under the Agreement, and Humana may thereafter draw down on the Financial Guarantee in the Financial Guarantee amount, terminate this Agreement effective upon the earlier of the expiration date of the Financial Guarantee or thirty (30) days notice to IPA, and hold all proceeds of the Financial Guarantee drawn upon until completion of the final settlement under the terms of this Agreement.

In the event Humana at any time request and receives payment under the Financial Guarantee, IPA shall, within seven (7) business days of the making of such payment by the Issuer, replenish the Financial Guarantee drawn upon by an amount equal to the amount of the payment. In the event that the Financial guarantee is not replenished or replaced in such amount within such time period, Humana may immediately draw down the balance of the Financial guarantee. In addition, such failure to replenish the Financial guarantee shall constitute a default by IPA under this Agreement, and Humana may thereafter draw down on the Financial Guarantee Amount, terminate this Agreement effective upon the earlier of the expiration date of the Financial guarantee or thirty (30) days following the end of the seven (7) business day period described above, and hold all proceeds of the Financial Guarantee until completion of the final settlement under the terms of this Agreement.

If at any time Humana reasonably determines based upon results of the IPA's operations that the total financial deficits attributable to IPA under this Agreement exceeds the Financial Guarantee Amount, Humana shall give written notice to IPA of such deficits, together with its calculations thereof, and IPA shall have ten (10) business days following such notice to increase the Financial Guarantee Amount by the amount equal to the amount of the deficit which is in excess of the Financial guarantee Amount. In the event IPA does not increase the Financial Guarantee by such amount within the ten (10) business day period described above, such failure shall constitute a default by IPA under this Agreement, and Humana may terminate this Agreement effective upon the earlier of the expiration date of the Financial Guarantee or upon thirty (30) days written notice of termination to IPA, and hold all proceeds of the financial guarantee until completion of the final settlement under the terms of this Agreement.

Notwithstanding anything to the contrary in this Agreement, Humana may upon written notice to IPA upon the failure of IPA to provide a Financial guarantee, or replacement or amendment thereof, or to replenish a drawn upon Financial Guarantee, as required under this Agreement, and without prejudice to any other rights of Humana stated herein, offset any part or all of IPA's payment from Humana under this Agreement up to the financial guarantee Amount.

**IPA-SR-FL/5-98**

16

## INDEPENDENT PRACTICE ASSOCIATION PARTICIPATION AGREEMENT

### 26. COORDINATION OF BENEFITS/RECOVERY RIGHTS

26.1    Payment for Covered Services provided to each Member are subject to reimbursement, or subrogation with other benefits payable or paid to or on behalf of the Member, and to HUMANA's rights of recovery in third party liability situations. IPA agrees and/or shall require IPA Physicians to agree to accept any HUMANA capitation or other payment amounts due under this Agreement, plus any Copayments due from Member, as payment in full for all Covered Services provided to Members, and IPA hereby assigns and shall require IPA Physicians to assign to HUMANA all IPA's and/or IPA Physicians' recovery, reimbursement or subrogation rights along with other benefits that may be payable with respect to a Member.

26.2    In cases where a Member has coverage, other than with HUMANA, which requires or permits coordination of benefits from a third party payor in addition to HUMANA, HUMANA will coordinate its benefits with such other payor(s). HUMANA will pay the lesser of: (I) the amount due under this Agreement; or (II) the amount due under this Agreement less the amount payable or to be paid by the other payor(s) or (III) the difference between allowed billed charges and the amount paid by the other payor(s). In the event Medicare is the primary payor, HUMANA shall pay IPA and/or IPA Physicians, as applicable, the amount of deductible, coinsurance and/or other plan benefits which are not covered services under Title XVIII of the Social Security Act, as amended, subject to the benefit limits and rates of the applicable health benefits contract. In no event will HUMANA pay an amount which when combined with payments from the other payor(s) exceeds the contracted rate provided in this Agreement. HUMANA will in all cases coordinate benefits payments in accordance with applicable statutes, laws and regulations and in accordance with its health benefits contracts.

26.3    IPA agrees to use and shall require IPA Physicians to agree to use their best efforts to determine the availability of other benefits, including third party liability, and to obtain any information or documentation required by HUMANA to facilitate HUMANA's coordination of such other benefits.

### 27. NO LIABILITY TO MEMBERS FOR CHARGES

27.1    IPA agrees and shall require IPA Physicians to agree that in no event, including, but not limited to non-payment by HUMANA, HUMANA's insolvency or breach of this Agreement, IPA and/or IPA Physicians shall bill, charge, collect a deposit from, seek compensation, remuneration or reimbursement from, or have any recourse against Members of HUMANA or persons other than HUMANA acting on their behalf for Covered Services provided pursuant to this Agreement. This provision shall not prohibit collection from Member for any non-covered service or Copayment amounts in accordance with the terms of the applicable Member health benefits contract and with the terms of this Agreement.

27.2    IPA agrees and shall require IPA Physicians to agree that in the event of HUMANA's insolvency or other cessation of operations, benefits to Members will continue for the periods for which premiums have been paid and benefits to Members confined in an inpatient facility on the date of insolvency or other cessation of operations will continue until their discharge.

**IPA-SR-FL/5-98**                                                                                    17

BATES PAGE 54

## INDEPENDENT PRACTICE ASSOCIATION PARTICIPATION AGREEMENT

**27.3** IPA further agrees, and shall require IPA Physicians to agree that: (I) this provision shall survive the termination of this Agreement regardless of the cause giving rise to termination and shall be construed to be for the benefit of the Member; (II) this provision supersedes any oral or written contrary Agreement now existing or hereafter entered into between IPA Physicians and Members or persons acting on their behalf and (III) this provision shall apply to IPA Physicians; and IPA shall obtain from such persons specific agreement to this provision.

**27.4** Any modification, addition or deletion to this Article 27 of the Agreement shall not become effective until after the Commissioner of Insurance has given HUMANA written notice of approval of such proposed changes, or such changes are deemed approved in accordance with State laws.

### 28. *MORE FAVORABLE AGREEMENTS*

If during the term of this Agreement, IPA enters into any contract or other arrangement under which the IPA renders and/or provides for the provision of medical services through its IPA Physicians at a discount, differential or other allowance which is more favorable than the payment method or rates set out in Attachment E, then the IPA shall notify HUMANA immediately, in accordance with Article 44, and HUMANA shall be entitled to such discount, differential or other allowance effective as of the effective date of such other contract or arrangement. This provision shall not apply to medical services provided under any government program.

### 29. *CONFLICT OF INTEREST*

**29.1** IPA hereby represents and warrants that except as disclosed in Attachment G, IPA, including all Principals of IPA, and IPA Physicians do not have an interest, directly or indirectly, as a partner, officer, member, director, including but not limited medical director, shareholder of more than five percent (5%) of the entity's outstanding shares, financial, business and/or medical advisor, employee or in any other employed, managerial, advisory, fiscal, ownership or control capacity, in any other health maintenance organization, prepaid health plan or similar entity providing prepaid health services, and/or any affiliated companies thereof, hereafter referred to as Competitive Plan.

**29.2** IPA agrees that IPA has a continuing obligation to update any and all information in Attachment G and to notify HUMANA immediately of any changes herein.

### 30. *ACCESS TO INFORMATION*

**30.1** Upon request, IPA agrees and shall require IPA Physicians to agree that HUMANA, or its designee, shall have reasonable access and an opportunity to thoroughly examine, during normal business hours, on at least twenty-four (24) hours☐ advance notice, or such shorter notice as may be imposed on HUMANA by a federal or state regulatory agency or accreditation organization, the facilities, books, records and operations of IPA, IPA Physicians or any related entity or organization, as they apply to obligations of IPA and/or IPA Physicians under this Agreement. Related entity or organization shall be defined as: (I) having influence or ownership or control and (II) either a financial relationship or a relationship for rendering of services. The purpose of this clause is to permit HUMANA the right to assure compliance by IPA and IPA Physicians of all financial, operational, quality assurance, credentialing, as well as all other obligations of IPA and IPA Physicians' under this Agreement and their continuing ability to meet such obligations. IPA shall require IPA Physicians to consent to such access as a condition of its agreement with IPA.

EX12 BtsPg 55

BATES PAGE 55

# INDEPENDENT PRACTICE ASSOCIATION PARTICIPATION AGREEMENT

**30.2** Failure to comply with any request for access, by HUMANA or its agents, within seven (7) days of receipt of notification shall constitute a material breach of this Agreement.

## 31.   NEW PRODUCTS/PAYMENT MECHANISM

During the term of this Agreement, HUMANA may develop/implement new products and/or payment mechanisms, from time to time. Should HUMANA elect to offer IPA such new product and/or payment mechanism, IPA shall be provided with thirty (30) days' written notice prior to the implementation of such new products or payment mechanisms. If IPA does not object to the implementation of such new product or payment mechanism within such thirty (30) day notice period, IPA shall be deemed to have accepted the new product or payment mechanism. In the event IPA objects to any such new product or payment mechanism, the parties shall confer in good faith to reach agreement. If such agreement cannot be reached, such new product and/or payment mechanism shall not apply to this Agreement, and HUMANA may, at its sole discretion, terminate this Agreement upon ninety (90) days written notice to IPA. Further, in the event that such agreement is not reached, and HUMANA elects to continue this Agreement, IPA agrees to waive any non-compete or exclusivity arrangement between IPA and its Independent contractor IPA Physicians, and that HUMANA, at its sole discretion, may negotiate contracts with the Independent contractor IPA Physicians directly for such new product(s) or payment mechanism(s) upon fourteen (14) calendar days notice to IPA.

## 32.   ASSIGNMENT AND DELEGATION

**32.1** This Agreement is entered into to secure the services of IPA and IPA Physicians. Accordingly, any assignment by IPA and/or IPA Physicians of their interest under this Agreement shall require the prior written consent of HUMANA, which consent may be granted or denied in HUMANA's sole and complete discretion. As used in this paragraph, the term "assignment" shall also include a change of control in IPA and/or IPA Physician(s) by merger, consolidation, transfer or the sale of thirty-three percent (33%) or more stock or other ownership interest in IPA and/or IPA Physician(s). Any attempt by IPA and/or IPA Physician(s) to assign their interest under this Agreement without complying with the terms of this paragraph shall be void and of no effect, and HUMANA, at its option, may elect to terminate this Agreement without any further liability or obligation to IPA and/or IPA Physician(s). HUMANA may assign this Agreement in whole or in part to any purchaser of all or a substantial portion of the book of business in respect of which this Agreement is executed or to any affiliate of HUMANA, provided that the assignee agrees to assume HUMANA's obligations under this Agreement.

**32.2** Should HUMANA consent to an assignment or delegation of all or any portion of IPA or IPA Physicians obligations under this Agreement, the assignee, as a condition precedent to HUMANA's consent to assignment, shall comply with all the terms and conditions of this Agreement through the term of this Agreement in force at the time of the proposed assignment plus one (1) additional year.

## 33.   TERM AND TERMINATION OF AGREEMENT
This Agreement shall be effective only if and when HUMANA separately has notified IPA of its acceptance of IPA Physicians' applications. The term of this Agreement and provisions for its termination are outlined in Attachment F.

**IPA-SR-FL/5-98**                                                                                    19

EX12 BtsPg 56

BATES PAGE 56

# INDEPENDENT PRACTICE ASSOCIATION PARTICIPATION AGREEMENT

## 34. COMPLIANCE WITH REGULATORY REQUIREMENT

**34.1** IPA acknowledges, understands and agrees that this Agreement is subject to the review and approval of federal and applicable state regulatory agencies. Any modification of this Agreement requested by the agency(ies) shall be incorporated as provided in Article 35 of this Agreement.

**34.2** IPA Physicians shall be bound by and comply with the provisions of applicable state and federal laws, rules and regulations. HUMANA may terminate this Agreement immediately as to any individual IPA Physician, in the event that a IPA Physician violates any of the provisions of applicable state and federal laws, rules and regulations or commits any act or engages in any conduct for which his/her medical license is revoked or suspended, or otherwise is restricted by any state licensing or certification agency by which the IPA Physician is licensed, or is otherwise disciplined by such agency, department or any professional organization of physicians.

**34.3** IPA agrees to be bound by and comply with the provisions of applicable state and federal laws, rules and regulations. If IPA violates any of the provisions of applicable state and federal laws, rules or regulations or commits any act or engages in any conduct prohibited by any state licensing or certification agency HUMANA may terminate this Agreement immediately.

## 35. SEVERABILITY

If any part of this Agreement should be determined to be invalid, unenforceable, or contrary to law or professional ethics, that part shall be reformed, if possible, to conform to law and ethics, and if reformation is not possible, that part shall be deleted, and the other parts of this Agreement shall remain fully effective.

## 36. NOTIFICATION OF IMPAIRMENT

**36.1** IPA shall notify HUMANA, and shall require IPA Physicians to notify HUMANA immediately at any time if IPA and/or IPA Physician(s): (I) makes a general assignment for the benefit of its creditors; (II) becomes unable to pay its debts when due; (III) files a petition in bankruptcy, whether voluntary or involuntary and/or (IV) otherwise is impaired financially and is unable to perform its duties hereunder.

**36.2** HUMANA shall notify IPA immediately at any time if HUMANA: (I) makes an assignment for the benefit of its creditors; (II) becomes unable to pay its debts when due; (III) files a petition in bankruptcy, whether voluntary or involuntary and/or (IV) is otherwise impaired financially and is unable to perform its duties hereunder.

## 37. RIGHT TO CONTRACT

**37.1** IPA agrees that HUMANA shall be entitled to enter into contract negotiations with IPA Physicians and that IPA Physicians shall be entitled to enter into contracts with HUMANA for the direct provision of services to Members, and that IPA hereby agrees that any covenant not to compete or exclusivity arrangement between IPA and IPA Physicians as it relates to HUMANA, is waived: (I) at the election of IPA Physician; or (II) upon dissolution of IPA; or (III) in the event of notice of termination of this Agreement.

EX12 BtsPg 57

BATES PAGE 57

# INDEPENDENT PRACTICE ASSOCIATION PARTICIPATION AGREEMENT

**37.2** Further, IPA agrees that HUMANA may enter into contract negotiations with IPA Physicians at any time for the provision of medical services to HUMANA Members not covered under this Agreement.

**37.3** Notwithstanding anything to the contrary outlined above, this Article 37 shall apply to IPA Physicians directly employed or whose practices are owned by IPA only in the event such IPA Physician(s) terminate their employment with IPA regardless of the cause giving rise to such termination.

## 38. **INFORMATION**

Subject to applicable legal limitations, IPA and HUMANA mutually agree to share information necessary for the parties to meet their obligations under this Agreement, including but not limited to financial arrangements the parties may have with other health care providers and claims data regarding the provision of services to HUMANA Members covered under this Agreement. The parties agree that any such information shared shall be held in strict confidence and shall not be disclosed to any third party without the express written consent of the other party, except in response to a valid court order or when disclosure is required by a government agency.

## 39. **NON-COMPETE**

**39.1** During the term of this Agreement and for the one (1) year period following termination of this Agreement, regardless of the cause giving rise to such termination, IPA agrees and shall require IPA Physicians to agree that it is in their respective legitimate business interests to enter into the following restrictive covenants, such interests being the preservation and fostering of goodwill and the substantial business and other relationships the parties have with their respective Members, customers, providers, patients and others. Therefore, the parties agree to the following:

**39.1.1** IPA agrees and shall require IPA Physicians to agree not to, directly or indirectly: **(I)** engage in any activities which are in competition with HUMANA's comprehensive health insurance, health maintenance organization or comprehensive benefits plans business, including but not limited to obtaining a license to become a managed health care plan offering HMO or POS products; or **(II)** acquire, manage, establish or otherwise have any direct or indirect interest in any provider sponsored organization or network (such organization or network commonly and hereinafter referred to as a PSN, as now or in the future defined or authorized by HCFA or any other federal or state agency or enabling legislation or regulation, for the purpose of administering, developing, implementing or selling Medicare, Medicaid or other government sponsored heath insurance or benefit plans; or **(III)** contract or affiliate with another party which is a licensed managed care organization, where such affiliation or contract is for the purpose of offering and sponsoring HMO or POS products, and where IPA and/or IPA Physicians obtain an ownership interest in the HMO or POS managed health care product to be marketed. Notwithstanding the above, should IPA offer and/or contract or affiliate with another party for the purpose of sponsoring HMO or POS managed health care products at any of its locations, HUMANA, at its sole discretion, may terminate this Agreement upon ninety (90) days notice to IPA. **(IV)** not to enter into agreements at a percent of premium equal to or greater that HUMANA's, with any other managed care entities and/or insurance companies ando/or provider sponsored networks/organization for the provision of health care services to Medicare HMO, Medicare POS, and/or other Medicare replacement patients, at the same office sites where services are to be provided to HUMANA Members and as listed in Attachment C of this Agreement or at other office sites within a five(5) mile radius of said office sites listed in Attachment C.

EX12 BtsPg 58

BATES PAGE 58

# INDEPENDENT PRACTICE ASSOCIATION PARTICIPATION AGREEMENT

**40.  PATIENT SELF DETERMINATION ACT**

The IPA and IPA Physicians acknowledge and agree to comply with the laws of Florida respecting advance directives as defined in the Patient Self Determination Act (P.L. 101-508). An advance directive, being for example a living will or a durable power of attorney in which an individual makes decisions concerning his/her medical care, including the right to accept or refuse medical or surgical treatment.

**41.  RIGHT TO INJUNCTION**

In the event of an actual or threatened breach of this Agreement, HUMANA shall be entitled to an injunction enforcing this Agreement in addition to all other remedies available at law.

**42.  GOVERNING LAW**

**42.1**  This Agreement shall be governed by and construed in accordance with the laws of the State of Florida. In the event of a conflict between the terms of this Agreement and the terms of any IPA and/or IPA Physician agreement, the terms of this Agreement shall control.

**42.2.**  Further, IPA acknowledges and agrees and shall require IPA Physicians to acknowledge and agree that in the event of any conflict between IPA subcontracts with IPA Physicians and state and federal laws, rules and regulations to which HUMANA is subject, such state and federal laws, rules and regulations shall control.

**43.  WAIVER**

Waiver, whether expressed or implied, of any breach of any provision of this Agreement shall not be deemed to be a waiver of any other provision or a waiver of any subsequent or continuing breach of the same provision. In addition, waiver of one of the remedies available to either party in the event of a default or breach of this Agreement by the other party, shall not at any time be deemed a waiver of a party's right to elect such remedy(ies) at any subsequent time if a condition of default continues or recurs.

**44.  NOTICES**

Any notices, requests, demands or other communications, except notices of changes in policies and procedures pursuant to Article 7, required or permitted to be given under this Agreement shall be in writing and shall be deemed to have been given: (I) on the date of personal delivery or (II) provided such notice, request, demand or other communication is received by the party to which it is addressed in the ordinary course of delivery: (I) on the third day following deposit in the United States mail, postage prepaid, by certified mail, return receipt requested, (II) on the date of transmission by telegram, cable, telex or facsimile transmission or (III) on the date following delivery to a nationally recognized overnight courier service, each addressed to the other party at the address set forth below their respective signatures to this Agreement, or to such other person or entity as either party shall designate by written notice to the other in accordance herewith. Unless a notice specifically limits its scope, notice to any one party included in the term "HUMANA" or IPA shall constitute notice to all parties included in the respective terms.

EX12 BtsPg 59

BATES PAGE 59

# INDEPENDENT PRACTICE ASSOCIATION PARTICIPATION AGREEMENT

### 45. *CONFIDENTIALITY*

IPA agrees to maintain in strict confidence the contents of this Agreement and any information regarding any dispute arising out of this Agreement, and agree not to disclose the contents of this Agreement or information regarding any dispute arising out of this Agreement to any third party without the express written consent of HUMANA, except pursuant to a valid court order, or when disclosure is required by a governmental agency. Notwithstanding anything to the contrary herein, the parties acknowledge and agree that IPA Physicians may discuss the reimbursement methodology included herein with Members requesting such information.

### 46. *COUNTERPARTS AND HEADINGS*

**46.1** This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, and all of which together constitute one and the same instrument.

**46.2 The headings in this Agreement are for reference purposes only and shall not constitute a part hereof.**

### 47. *INCORPORATION OF ATTACHMENTS*

Attachments A, B, C, D, E, F, G, H, I, J and K are incorporated herein by reference and made a part of this Agreement.

### 48. *FORCE MAJEURE*

No party to this Agreement shall be deemed to breach its obligations under this Agreement if that party☐s failure to perform under the terms of this Agreement is due to any act of God, riot, war or natural disaster.

### 49. *ENTIRE AGREEMENT*

This Agreement, including the Cover Sheet, Manual, the Attachments and Amendments hereto and the documents incorporated herein, constitutes the entire agreement between HUMANA and IPA with respect to the subject matter hereof, and it supersedes any other agreement, oral or written, between HUMANA and IPA.

EX12 BtsPg 60

BATES PAGE 60

## INDEPENDENT PRACTICE ASSOCIATION PARTICIPATION AGREEMENT

### 50.    MODIFICATION OF THIS AGREEMENT

IPA acknowledges and agrees and shall require IPA Physicians to acknowledge and agree that this Agreement may be amended or modified in writing as mutually agreed upon by the parties. In addition, HUMANA may modify or amend this Agreement upon thirty (30) days written notice to IPA and, if applicable, the compensation rates identified herein shall be adjusted accordingly. Failure of IPA to object to such modification during the thirty (30) day notice period shall constitute acceptance of such modification. If IPA objects to such modification or amendment, notwithstanding any provision in this Agreement to the contrary, HUMANA may terminate this Agreement upon ninety (90) days written notice to IPA.

IN WITNESS WHEREOF, the parties have the authority necessary to bind the entities identified herein and have executed this Agreement to be effective as of this _____ day of_____, _____, thereafter known as Effective Date. It is provided, however, that HUMANA's execution of this Agreement shall not constitute the acceptance required to make this Agreement effective pursuant to Article 8.

**HUMANA**

By: _____

Print Name: _____

Title: _____
Date: _____

Address for Notice: _____
_____
_____
_____

**IPA**

By: _____

Print Name: BARKER   HEMANT

Title: PRESIDENT
Date: FEB 6 2006.

Address for Notice:
SUN FOREST PLAZA
5130 EISENHOWER BLVD.
TAMPA, FLORIDA 33634

COPY TO:
Humana Inc.
500 West Main Street
Louisville, KY 40201
Att.: Law Department

EX12 BtsPg 61

BATES PAGE 61

# INDEPENDENT PRACTICE ASSOCIATION PARTICIPATION AGREEMENT

## LIST OF ATTACHMENTS

A.     Ownership Disclosure Form

B.     IPA Product Participation List

C.     List of IPA Physician Locations

D.     IPA Physician Responsibilities

E.     IPA and IPA Physician Reimbursement

F.     Term and Termination of Agreement

G.     Conflict of Interest Disclosure Form

H.     Copy of Sample IPA Physician Letter of Agreement

I.     Sample Copy of Existing Agreement between IPA and IPA Physicians

J.     IPA Guarantee

K.     Balanced Budget Acts Provision

L.     Arbitration Provisions

IPA-SR-FL/5-98                                                    A1

# INDEPENDENT PRACTICE ASSOCIATION PARTICIPATION AGREEMENT

## ATTACHMENT A

### OWNERSHIP DISCLOSURE FORM

IPA: **TransAtlantic Health Care, LLC**

(Must be identical to the name shown on the Cover Sheet)

STATUS: _____ **Sole Proprietorship**

_____ **Professional Association**

___✓___ **Partnership or Limited Liability Company**

_____ **Corporation**

List names and addresses of all Principals and indicate percent ownership, if applicable. ("Principal" means any shareholder, officer, director, partner, joint venturer or anyone else having an ownership in or managerial control over IPA. Attach additional sheets if necessary).

MR. HEMANT BANKER

MR. JAMES O'ROURKE

IPA-SR-FL/5-98

A1

EX12 BtsPg 63

BATES PAGE 63

# INDEPENDENT PRACTICE ASSOCIATION PARTICIPATION AGREEMENT

## ATTACHMENT B

### IPA PRODUCT PARTICIPATION LIST

IPA and IPA Physicians agree to participate in all of the following health care benefit plans and agree to accept the terms and conditions set forth in this Agreement as they apply to such health care benefit plans.

**Health Care Benefit Plan**

**Medicare+Choice HMO Plans.**

IPA-SR-FL/5-98

A1

EX12 BtsPg 64

# INDEPENDENT PRACTICE ASSOCIATION PARTICIPATION AGREEMENT

## ATTACHMENT C

### LIST OF IPA PHYSICIAN LOCATIONS

#### (To be provided by IPA)

The following is a list of the IPA Physicians, and any Physician Extenders as applicable, including address, phone number, tax identification numbers, contact person, area of specialty and office hours, and area hospitals where IPA Physician(s) have admitting privileges, and the corresponding hospital privilege category, who will be providing services to HUMANA Members under this Agreement.

Physician: William W. Andrews, M.D.
Physician Extender(s):
Office Name: Belmont Medical Facility, Inc.
Office Address: 3105 N. 22nd Street, Tampa, FL 33605
Phone Number: (813) 248-5458
Fax Number: (813) 248-5526
Tax ID#: 59-2422749
Contact Person:
Specialty: Internal Medicine
Office Hours: M – F, 9:00 am – 5:00 pm

Physician: Ashok Bhat, M.D.
Physician Extender(s):
Office Name: Internal Medicine Associates of Tampa, P.A., d/b/a, Terrace Medical Care
Office Address: 4941 E Busch Blvd., Suite 140, Tampa, FL 33617-6056
Phone Number: (813) 985-2333
Fax Number: (813) 989-8746
Tax ID#: 59-3016985
Contact Person:
Specialty: Internal Medicine
Office Hours: M – F, 9:00 am – 5:00 pm

Physician: Ashok Bhat, M.D.
Physician Extender(s):
Office Name: Ashok Bhat, M.D., P.A.
Office Address: 613 W. Martin Luther King Blvd., Tampa, FL 33603
Phone Number: (813) 237-1958
Fax Number: (813) 237-8147
Tax ID#: 59-2898225
Contact Person:
Specialty: Internal Medicine
Office Hours: M – F, 9:00 am – 5:00 pm

Physician: Cesar D. Cruz, M.D.
Physician Extender(s):
Office Name: Cesar D. Cruz, M.D., L.L.C.
Office Address: 701 W. Martin Luther King Blvd., Suite 6, Tampa FL 33603
Phone Number: (813) 237-1106
Fax Number: (813) 238-5619
Tax ID#: 20-4222319
Contact Person:
Specialty: Internal Medicine
Office Hours: M – F, 8:30 am – 5:00 pm


Physician: Mouradi Elchahal, M.D.
Physician Extender(s):
Office Name: Mouradi Elchahal, M.D., P.A.
Office Address: 13801 Bruce B. Downs Blvd, Suite 104, Tampa, FL 33613-4652
Phone Number: (813) 972-5420
Fax Number: (813) 977-2021
Tax ID#: 59-3746141
Contact Person:
Specialty: Internal Medicine
Office Hours: M – TH, 8:30 am – 5:00 pm


Physician: Teodulo R. Mationg, M.D.
Physician Extender(s):
Office Name: Teodulo R. Mationg, M.D., P.A.
Office Address: 10201 State Road 52, Hudson, FL 34669
Phone Number: (727) 857-1818
Fax Number: (727) 857-1609
Tax ID#: 59-3072711
Contact Person:
Specialty: Internal Medicine
Office Hours: M – TH, 8:00 am – 4:30 pm


Physician: Richard P. Molloy, M.D.
Physician Extender(s):
Office Name: Richard P. Molloy, M.D., P.A.
Office Address: 13801 Bruce B. Downs Blvd, Suite 202, Tampa, FL 33613
Phone Number: (813) 971-0195
Fax Number: (813) 971-2986
Tax ID#: 59-1611342
Contact Person:
Specialty: Internal Medicine
Office Hours: M – TH, 9:00 am – 5:00 pm; F, 9:00 am – 3:00 pm

EX12 BtsPg 66

BATES PAGE 66

Physician: Todd K. Rosenthal, M.D.
Physician Extender(s):
Office Name: Todd K. Rosenthal, M.D., L.L.C.
Office Address: 8004 N. Armenia Avenue
Phone Number: (813) 933-9131
Fax Number: (813) 933-9721
Tax ID#: 20-4239336
Contact Person:
Specialty: Internal Medicine
Office Hours: M – TH, 8:30 – 5:00 pm


Physician: Mukund Amin, M.D.
Physician Extender(s):
Office Name: Family Medical Clinic of Hillsborough County, Inc.
Office Address: 3120 W. Hillsborough Ave., Tampa, FL 33614-5927
Phone Number: (813) 877-7773
Fax Number: (813) 877-3771
Tax ID#: 59-3232625
Contact Person:
Specialty: Internal Medicine
Office Hours: M – F, 8:30 am – 4:30 pm


Physician: Atul Shah, M.D.
Physician Extender(s):
Office Name: Family Medical Clinic of Hillsborough County, Inc.
Office Address: 3120 W. Hillsborough Ave., Tampa, FL 33614-5927
Phone Number: (813) 877-7773
Fax Number: (813) 877-3771
Tax ID#: 59-3232625
Contact Person:
Specialty: Internal Medicine
Office Hours: M – F, 8:30 am – 4:30 pm


Physician: Robert A. Young, M.D.
Physician Extender(s):
Office Name: Robert A. Young, M.D. P.A.
Office Address: 13910 Lakeshore Blvd., Suite 130, Hudson, FL 34667
Phone Number: (727) 862-5478
Fax Number: (727) 862-5477
Tax ID#: 02-0640276
Contact Person:
Specialty: Internal Medicine
Office Hours: M, T, TH – 9:00 am – 6:00 pm; W & F, 9:00 am – 4:00 pm

EX12 BtsPg 67

BATES PAGE 67

# INDEPENDENT PRACTICE ASSOCIATION PARTICIPATION AGREEMENT

## ATTACHMENT D

### IPA PHYSICIAN RESPONSIBILITIES

**A:  COVERED SERVICES**

For Members under health benefit plans offered, underwritten or administered by HUMANA, IPA Physicians shall provide all available medical services according to their medical practice, including but not limited to emergency care, offered by IPA Physicians to Members. IPA or IPA Physicians, as applicable, shall be compensated for the provision of Covered Services as specified in Attachment E of this Agreement.

IPA shall require IPA Physicians to be responsible twenty-four (24) hours a day, seven (7) days a week for providing or arranging for all Covered Services for Members, including but not limited to prescribing, directing and authorizing all urgent and emergency care for Members.

IPA shall provide and/or shall require IPA Physicians to provide to HUMANA upon request a written description of IPA Physicians' arrangements for emergency and urgent care and service coverage in the event of IPA Physician unavailability due to vacation, illness or after hours. IPA shall ensure that all physicians providing coverage are contracted and credentialed physicians with HUMANA. IPA will ensure that all physicians providing coverage render services under the same terms and conditions and in compliance with all provisions of this Agreement. Compensation to physicians for "on call" coverage will be the responsibility of IPA.

In the event that emergency and urgent care services are needed by Member outside the service area, IPA shall require IPA Physicians to monitor and authorize the out-of-area care and to provide direct care as soon as the Member is able to return to the service area for treatment without medically harmful or injurious consequences.
In the event that this Agreement is terminated for whatever reason, IPA shall require IPA Physicians to continue Member(s)' course of treatment, including but not limited to medication therapy, until the Member(s) has been evaluated by a new Participating Provider and the new Participating Provider has had a reasonable opportunity to review or modify Member(s)' course of treatment.

Covered Services shall include but not be limited necessarily to: medical and surgical services, including anesthesia; diagnostic tests and procedures that are a part of treatment; other services ordinarily furnished in the physician office, such as x-rays ordered as part of treatment; services of the physician's office nurse(s); drugs and biologicals that cannot be self-administered; transfusions of blood and blood components and medical supplies. The applicable Commercial Member's health benefits contract shall be the document looked to for the description and definition of Covered Services for Commercial HMO Members, and the Medicare HMO Member's Handbook shall be the document looked to for the description and definition of Covered Services for Medicare HMO Members. Should HUMANA offer supplemental benefits not covered in the Medicare Member Handbook, HUMANA agrees to provide documentation to IPA of such supplemental benefits.

Additionally, IPA shall require each individual IPA Physician to agree that in the event this Agreement is terminated, or IPA is determined invalid under any applicable state or federal law, either through governmental edict or judgement in a court of law, or in the event that IPA is dissolved for whatever reason, IPA Physicians shall continue to provide medical services under the terms and conditions of this Agreement and HUMANA agrees to continue to pay IPA Physicians in accordance with the payment arrangements stated in Attachment E of this Agreement, for a period of one hundred eighty (180) days after notice, during which time a new physician agreement may be negotiated between HUMANA and the individual IPA Physicians.

EX12 BtsPg 68

BATES PAGE 68

# INDEPENDENT PRACTICE ASSOCIATION PARTICIPATION AGREEMENT

## ATTACHMENT D (con't)

**B:   PANELS**

IPA shall ensure that the appointment availability standards set forth in the Manual are met by IPA Physicians. IPA further agrees that these standards may be changed from time to time by HUMANA. In the event of such change, HUMANA agrees to provide IPA with thirty (30) days written notice of such change.

IPA shall ensure that a sufficient number of IPA Physicians, both primary and specialist Physicians, are available to provide coverage to meet the above outlined appointment availability standards and as required by HUMANA. IPA acknowledges and agrees that all such IPA Physicians shall agree to abide by all of the terms and conditions of this Agreement.

**C:   PHYSICIAN EXTENDERS**

IPA agrees and shall require IPA Physicians to agree that in the event that IPA and/or any IPA PHYSICIAN employs or subcontracts or utilizes the services of a physician extender, meaning a physician assistant, advanced registered nurse practitioner, or certified nurse midwife, who will be providing services to HUMANA Members under the supervision of IPA Physicians, IPA shall and/or shall require IPA Physicians to notify HUMANA in writing, upon execution of this Agreement and at any time during the term of this Agreement when such physician extenders are employed or subcontracted with IPA and/or IPA Physicians, and the specific services that such physician extenders will be performing, prior to the provision of services to any HUMANA Member.

Further, IPA agrees and shall require IPA Physicians to agree that IPA and/or IPA Physicians, as applicable, shall ensure that such physician extenders obtain and maintain for the term of this Agreement adequate professional liability insurance coverage and all applicable licensure and certification required by law or HUMANA. IPA shall and/or shall require IPA Physicians to provide evidence of such insurance coverage prior to execution of this Agreement and upon request at any time during the term of this Agreement.

IPA acknowledges and agrees that HUMANA retains the right to approve, suspend and/or terminate participation under this Agreement of any physician extender who will be providing services to HUMANA Members.

**D:   SPECIFIC REFERRALS**

IPA acknowledges and agrees and shall require IPA Physicians to acknowledge and agree that certain referrals are required to be made to specific providers designated by HUMANA. The cost for such specific referrals shall be expensed against the appropriate fund as described in Attachment E. These specific referral providers include but are not limited to :

| Services | Vendor Entity |
|---|---|
| Laboratory | Laboratory Corporation of America |
| Mental Health | Mental HealthNet |
| Vision | Premier Eye Care of Florida |
| Dental | TDC., Inc |
| Chiropractic | Florida Chiropractic Institute |
| Podiatry | Ankle and Foot |
| DME | Rotech |
| Hearing | HearX LTD |
| Nephrology | Nephrology Care Management System, Inc. |
| Demand Management | Access Health Solutions |

EX12 BtsPg 69

BATES PAGE 69

# INDEPENDENT PRACTICE ASSOCIATION PARTICIPATION AGREEMENT

## ATTACHMENT D (con't)

IPA further acknowledges and agrees that such specific providers may be changed or added to upon written notice by HUMANA to IPA.

### E: DISEASE MANAGEMENT PROGRAMS

IPA agrees and shall require IPA Physicians to agree to participate in HUMANA's Disease/Case Management and Transplant Management Programs as they are developed and implemented. The cost of such programs shall be expensed against the applicable Part A or Part B Funds.

### F: HUMANA FIRST

IPA agrees and shall require IPA Physicians to agree to participate in HUMANA's twenty-four (24) hour nurse call program - HumanaFirst. The cost for this program will be expensed against the Part __A__ Funds.

### G: HEALTH IMPROVEMENT STUDIES

IPA agrees and shall require IPA Physicians to agree to participate in HUMANA's health improvement studies as they are developed and implemented.

### H: QUALITY IMPROVEMENT ACTIVITIES

IPA agrees and shall require IPA Physicians to agree to cooperate with HUMANA's quality improvement activities and upon request by HUMANA to participate in HUMANA's quality improvement activities as they are developed and implemented.

### I: SERVICES TO BE PROVIDED TO MEMBERS ASSIGNED TO IPA PRIMARY CARE PHYSICIANS

IPA agrees to require IPA Primary Care Physicians to provide or arrange for Covered Services to Members who have selected and then been assigned to IPA Primary Care Physicians. IPA will require IPA Primary Care Physicians to accept new Members who are assigned to IPA Physicians without discrimination or screening of such Members based on their health status. IPA further agrees to require IPA Primary Care Physicians to agree not to close their practices to new Members until such time as IPA and/or IPA Primary Care Physician has reasonably demonstrated to HUMANA that IPA Primary Care Physician has no additional capacity for new Members. IPA and IPA Primary Care Physician acknowledge and agree that any closure of an IPA Physician's practice to new patients shall be subject to the terms and conditions of Article 13 of this Agreement.

**IPA shall require IPA Primary Care Physicians to provide primary care services, including but not limited to those outlined below, to Members.**

Routine office visits (including after hours office visits which can be arranged with other IPA Physicians and with HUMANA's approval) and related services of IPA Physicians and other IPA Providers rendered in the IPA Primary Care Physicians' office, including evaluation, diagnosis and treatment of illness and injury.

Visits and examinations, including consultation time and personal attendance with the patient, during confinement in a hospital, skilled nursing facility or extended care facility.

EX12 BtsPg 70

BATES PAGE 70

# INDEPENDENT PRACTICE ASSOCIATION PARTICIPATION AGREEMENT

## ATTACHMENT D (con't)

Pediatric and adult immunizations and TB skin testing in accordance with accepted medical practice.

Administration of injections, including injectibles for which a separate charge is not routinely made.

Initial care at birth and well-child care for pediatric Members.

Periodic health appraisal examinations including all routine test performed in IPA Primary Care Physician(s)' office.

Eye and ear screening for children through age seventeen (17) to determine the need for vision or hearing correction.

The routine diagnostic laboratory tests under primary care responsibilities shall include but not be limited to: Urinalysis, Serum Glucose, CBC (or any portion thereof), Occult Blood, Gram Stains and Pregnancy Tests.

Miscellaneous supplies related to treatment in IPA Primary Care Physician's office, including gauze, tape, band-aids and other routine medical supplies.

Patient health education services and referrals as appropriate, including informational and personal health patterns, appropriate use of health care services, family planning, adoption and other educational and referral services, but not the cost of such referral services.

Telephone consultations with other physicians and Members.

Other Primary Care services as defined normal practice for primary care physicians, including but not limited to all diagnostic laboratory, electro diagnostic or radiology services ("Diagnostic Services") provided by IPA Primary Care Physicians.

## J:   SERVICES TO BE PROVIDED BY IPA SPECIALIST PHYSICIANS

For Members under health benefit or health contracts offered, underwritten or administered by HUMANA, IPA Physicians shall provide all available medical services according to their medical specialty practice, including but not limited to emergency care, offered by IPA Physicians to Members without discrimination or screening of such Members based on health status. IPA or IPA Physicians, as applicable, shall be compensated for the provision of Covered Services as specified in Attachment E of this Agreement.

## K:   SERVICES TO BE PROVIDED TO MEMBERS NOT ASSIGNED TO IPA PRIMARY CARE PHYSICIANS

For Members under health benefit or health care contracts offered, underwritten or administered by HUMANA where Members are not assigned to a primary care provider, IPA shall require IPA Physicians to agree to provide all available medical services, including but not limited to emergency care, offered by IPA Physicians to such Members without discrimination or screening of such Members based on health status. IPA or IPA Physicians, as applicable, shall be compensated for the provision of Covered Services as specified in Attachment E of this Agreement.

EX12 BtsPg 71

BATES PAGE 71

# INDEPENDENT PRACTICE ASSOCIATION PARTICIPATION AGREEMENT

## EXHIBIT E-3

### DIVISION OF FINANCIAL RESPONSIBILITY

Costs for Covered Services provided to Members not previously identified in this Attachment E shall be expensed against the appropriate Fund as described herein as the Division of Financial Responsibility. The Division of Financial Responsibility is intended to reflect historical medical cost expensing experience and accounting practices for this HUMANA market. Notwithstanding the foregoing, the cost of any Covered Services not specifically identified herein, or the cost of any Covered Services that may be in conflict between the Division of Financial Responsibility and the historical expensing experience or accounting practice shall be expensed to the respective Fund in accordance with HUMANA's historical practice for the market.

**Part A Expenses:**

Alcohol Rehabilitation
    Facility Component
Ambulance, Air/Ground
    Transport/Care Cab
    In Area
    Out Of Area
Blood &Blood Products
    Admin Fee From Blood Bank
    Autologous Blood Donations
    Blood Transfusion
    Other Blood Products-Factor VIII
Cardiac Rehabilitation
    Facility Component
Chemotherapy
    IV Drugs-In Patient
    Facility Component
Colostomy Supplies
Contact Lenses
    Intraocular Lens(Surgically Implanted)
Cosmetic/Reconstructive Surgery (Medically Necessary)
    Facility Component
Dental Services-Accident/Injury Only
    Facility Component
Dental Services-Accident/Injury Only
    Facility Component

EX12 BtsPg 72

BATES PAGE 72

## INDEPENDENT PRACTICE ASSOCIATION PARTICIPATION AGREEMENT

Drug Rehabilitation
    Facility Component
    Professional Component
Durable Medical Equipment (DME)
    Apnea Monitor
    Corrective Appliances (DME)
    Surgically Implanted
    Facility Component
    Hearing Aids
Emergency Room Care-In Area
    Facility Component (Patient Not Admitted)
Emergency Room Care-Out Of Area
    Facility Component
Endoscopic Studies
    Facility Component
Family Planning
    *E.G.Amniocentesis, Artificial Insemination,*
    *Contraceptive Devices, Genetic Testing,*
    *Infertility Treatment, Ligation*
    Facility Component
Fetal Monitoring
    Facility Component
Hearing Aids
Hemodialysis Facility
    Facility Component
Home Health Care
    Intravenous (IV)
    Immuno Suppressive Drug (Outpatient)
Hospice Services
Hospitalization(Inpatient)
    In Area
    Out Of Area
Laboratory Services
    Facility Component
Lithotripsy
    Facility Component
Medication
    Inpatient
Mental Health
    Facility Component
Nuclear Medicine Diagnostics/Treatment
    Facility Component
Observations
    Facility Component
Ophthalmology-See Vision Care
Organ Transplants (Non-Experimental)
    Facility Component
Outpatient Surgery

**IPA-SR-FL/5-98**
          **E10**

Facility Component
Pediatric Services-Newborn
    Facility Component
Professional Services (Hospital Based
Outpatient Facility /Other)
Physical Therapy
    Inpatient Or Nursing Home/Rehab
    Outpatient (In Home)
Podiatry Services
    Facility Component
Pregnancy(Ob With/Without Complications)
    Facility Component
Prosthetic Devices
    Surgically Implanted
    Outpatient
Radiation Therapy
    Facility Component
Refractions(See Vision Care)
Rehabilitation(Short Terms,I.E. P.T.,O.T.,
Speech, Cardiac Therapy
    Facility Component
Skilled Nursing Facility
Sleep Studies
    Facility Component
Surgical Supplies
    Inpatient
TMJ
    Facility Component
Vision Care

### PART B SERVICES

Alcohol Rehabilitation
    Professional Component
Allergy
    Testing
    Serum
    Injections
Ambulance, Air/Ground
Amniocentesis
Anesthetics
Artificial Limbs
    See Prosthetics
Biofeedback
Blood &Blood Products
    Professional Component
Chemotherapy
    IV Drugs-Out Patient

**IPA-SR-FL/5-98**                                                          **E10**

Other Drugs
    Professional Component
Chiropractic
Circumcision
    Professional Component
Contact Lenses
Cosmetic/Reconstructive Surgery (Medically Necessary)
    Professional Component
    Prosthetics(Implanted)**
    **Combine With Surgery Code
Dental Services-Accident/Injury Only
    Professional Component
Soft DME Such As: (Outpatient)**
    ***Would Be Coded As Part Of Surgery Code or as a supply
    Dressings
    Slings, Casts
    Ace Bandages
    Elbow Supports
    Elbow-Tennis Brace
    Back Brace
Emergency Room Care-In Area
    Hospital Based Physician
    Specialist Consult
Emergency Room Care-Out Of Area
    Professional Component
Endoscopic Studies
    Professional Component
Family Planning
        E.G.AMNIOCENTESIS, ARTIFICIAL Insemination,
        Contraceptive Devices, Genetic Testing,
        Infertility Treatment, Ligation
    Professional Component
    Genetic Testing
    Norplant Device And Insertion
    Artificial Insemination
    Invitro Fertilization(Paid Through Separate Program)
    Infertility (Diagnosis & Treatment)
Fetal Monitoring
    Professional Component
Hemodialysis Facility
    Professional Component
Home Health Care
Hospitalization(Inpatient)
Laboratory Services
    Professional Component
Lithotripsy
    Professional Component
Mammography

EX12 BtsPg 75

BATES PAGE 75

# INDEPENDENT PRACTICE ASSOCIATION PARTICIPATION AGREEMENT

Medication
    Intravenous-PCP's Office/Outpatient
    Outpatient Covered Injectables And Substances
    Outpatient Non-Injectables(PCP's Office & Outpatient)
Mental Health
    Professional Component
    Biofeedback
Nuclear Medicine Diagnostics/Treatment
    Professional Component
Observations
Professional Component
Ophthalmology-See Vision Care
Organ Transplants(Non-Experimental)
    Professional Component
Orthotics(Medically Necessary)
    Foot Orthotics
Outpatient Surgery
    Professional Component
    Outpatient Diagnostic Service -Facility &
    Professional(Including But Not Limited To List)
    Cat Scan
    2 D Echo
    EEG
    EKG
    EMG
    ENG
    MRI
    Ultrasound
Pediatric Services-Newborn
    Professional Component*Specialist
Professional Services(Hospital Based
Outpatient Facility /Other)
Physical Therapy
    Outpatient(In Office)
Podiatry Services
    Professional Component
Pregnancy(Ob With/Without Complications)
    Professional Component
Prosthetic Devices
Radiation Therapy
    Professional Component
Radiology Services
    Professional Component
Refractions(See Vision Care)
Rehabilitation(Short Terms,I.E. P.T.,O.T.,
Speech, Cardiac Therapy
    Professional Component

# INDEPENDENT PRACTICE ASSOCIATION PARTICIPATION AGREEMENT

## EXHIBIT E-3 (con't)

Sleep Studies
    Professional Component
PCP Consultation With Specialists
Surgical Supplies
    Outpatient (PCP's Office/Outpatient)
TMJ
    Diag. & Medically Necessary Correction
Vision Care
    Implanted Lenses(Cataract Surgery)
    Lenses,Refraction & Frames Incident To Cataract Sur.
    Non-Cataract L\Related Lenses And Frames
    Medically Necessary Care
    Ophthalmology
    Vision Rider With Discounted Eyeware
Pharmacy
Family Planning
    Diaphragms
    Oral Contraceptives
Insulin &.Syringes
Medication
    Scripted Outpatient Non-Injectables

## PCP/CAPITATED SERVICES

Hearing Screening(Pcp's Office)
Nutritional/Dietetic Counseling
Pediatric Services-Newborn
    PCP Office Visit
PCP Visits/Consultations/Examinations
    To Hospital
    To SNF
    To Patients Home
PCP Office Visits/Consultations/Exams
    Routine
    After Hours(Arranged By PCP)
    Supplies,Splints,Bandages,Etc
    Health Education
    Periodic Health Evaluation(Physical)
    Pap Smears
    Immunization And Inoculations(Medically Indicated)
    TB Skin Testing
    Well Baby/Child Care
    Preventive Health
    Vision Care
    Refractions,Routine
    Screenings(PCP's Office/Outpatient)

**IPA-SR-FL/5-98**

E13

BATES PAGE 77

# INDEPENDENT PRACTICE ASSOCIATION PARTICIPATION AGREEMENT

## EXHIBIT E-3 (con't)

### EXCLUDED SERVICES

Dental Services(Routine)
    TMJ as Dental Treatment
Employment Physical
Experimental Procedures
    Reversal Of Sterilization
Marriage Counseling
Immunization And Innoculations(Work/Travel)

EX12 BtsPg 78

BATES PAGE 78

# INDEPENDENT PRACTICE ASSOCIATION PARTICIPATION AGREEMENT

## ATTACHMENT F

## TERM OF AGREEMENT

The term of this Agreement shall be for a twenty-two (22) month period commencing on APRIL 1, 2006___. This Agreement shall automatically renew for subsequent one (1) year terms unless either party provides written notice of termination to the other party at least one hundred and eighty (180) days prior to the end of the initial term or any subsequent renewal terms. In addition, this Agreement may be terminated by the mutual consent of both parties at any time.

HUMANA may terminate any individual IPA Physician from participation under this Agreement by giving IPA Physician written notice of termination at least sixty (60) days prior to the effective termination date.

IPA may terminate this Agreement for cause if HUMANA fails to make payments required under this Agreement, but only after written notice and providing at least sixty (60) days in which HUMANA may avoid termination by curing the default in payment. Any dispute concerning the amount of payment owed shall be resolved according to the procedures specified in the Manual.

HUMANA may terminate this Agreement, and/or any individual IPA Physician, immediately upon written notice, stating the cause for such termination in the event HUMANA reasonably determines that: (I) IPA and/or IPA Physician's continued participation under this Agreement may affect adversely the health, safety or welfare of any Member or bring HUMANA or its health care networks into disrepute; or (II) in the event of a IPA Physicians death or incompetence; or (III) IPA Physician(s) fails to meet HUMANA□s credentialing criteria or (V) as specified in the Manual. Further, HUMANA may terminate this Agreement immediately upon written notice to IPA in the event that: (I) IPA engages in or acquiesces to any act of bankruptcy, receivership or reorganization or (II) HUMANA loses its authority to do business in total or as to any limited segment of business but then only as to that segment.

Additionally, in the event of a material breach of this Agreement by either party, the non-breaching party may terminate this Agreement upon at least ninety (90) days prior written notice to the breaching party, which notice shall specify in detail the nature of the alleged material breach; provided however, that if the alleged breach is susceptible to cure, the breaching party shall have sixty (60) days from the date of receipt of notice of termination to cure such breach, and if such breach is cured, then the notice of termination shall be void of and of no effect. If the breach is not cured within the sixty (60) day period, then the date of termination shall be that date set forth in the notice of termination. Notwithstanding the above, any breach related to credentialing or recredentialing, quality assurance issues or alleged breach regarding termination by HUMANA in the event that HUMANA determines that IPA's and/or any individual IPA Physicians□ continued participation under this Agreement may affect adversely the health, safety or welfare of any Member or bring HUMANA or its health care networks in to disrepute, shall be considered non-curable.

IPA understands that termination of this Agreement shall not relieve IPA Physicians' obligation to provide or arrange for Covered Services through the last day of this Agreement. HUMANA retains the right to recover from IPA any costs paid on behalf of IPA and/or IPA Physicians which are their obligations and become necessary to be paid by HUMANA to maintain the health care delivery network.

Upon termination, IPA shall require IPA Physicians to provide Covered Services to any Member hospitalized on the date of termination until the date of discharge or until HUMANA has made arrangements for substitute care. HUMANA agrees to pay for such Covered medical Services rendered to hospitalized Member(s) in accordance with the fee-for-service payments identified in Attachment E.

**IPA-SR-FL/5-98**                                                                                           **F2**

# INDEPENDENT PRACTICE ASSOCIATION PARTICIPATION AGREEMENT

## ATTACHMENT F (con't)

Unless otherwise stated above, termination will be effective on the first day of the month following the completion of the notification period.

### Compliance with Florida Statutes:

As required under Florida Statute Section 641.234, as amended, effective October 1, 1988, if the Department of Insurance has information and belief that this Agreement requires Humana Medical Plan, Inc., PCA Health Plans of Florida, Inc. and/or PCA Family Health Plan, Inc. ("HUMANA") to pay a fee which is unreasonably high in relation to the services provided, after review of this Agreement, the department may order HUMANA to cancel this Agreement if it determines that the fees to be paid by HUMANA are so unreasonably high as compared with similar contracts entered into by HUMANA or as compared with similar contracts entered into by other health maintenance organizations in similar circumstances, such that this Agreement is detrimental to the subscribers, stockholders, investors or creditors of HUMANA. The issuance of such an order by the Florida Department of Insurance will not affect the termination of the entire Agreement which shall remain in full force and effect with respect to Humana Health Insurance Company of Florida, Inc., Humana Insurance Company, Employers Health Insurance Company and PCA Life Insurance Company and product lines contemplated in the Agreement to which this provision is made a part.

As required under Florida Statute Section 641.315, IPA shall provide at least sixty (60) days, or such other period of time as indicated in this Agreement, whichever is longer, advance written notice to HUMANA at the address listed in the "Notices" section of this Agreement, and to the Florida Department of Insurance, Bureau of Life and Health Solvency and Market Conduct, 200 East Gaines Street, Tallahassee, Florida 32399-0327, before canceling this Agreement with HUMANA for any reason. HUMANA shall also provide sixty (60) days or such other period of time as indicated in this Agreement, whichever is longer, advance written notice to the IPA at the address listed in the ☐Notice☐ Article of this Agreement, and to the Florida Department of Insurance, Bureau of Life and Health Solvency and Market Conduct, 200 East Gaines Street, Tallahassee, Florida 32399-0327, before canceling this Agreement with IPA for any reason. Nonpayment for goods or services rendered by IPA and/or IPA Physicians to HUMANA or any of its Members shall not be a valid reason for avoiding such sixty (60) day advance notice of cancellation. Upon receipt by HUMANA of a sixty (60) day cancellation notice, HUMANA, if requested by the IPA, may terminate the contract in less than sixty (60) days if HUMANA is not financially impaired or insolvent.

HUMANA and IPA hereby acknowledge and agree that the provisions stated in the previous paragraph do not relieve the IPA or any of IPA Physicians of any of their other obligations under this Agreement that are not inconsistent with the foregoing, including without limitation any obligation IPA has to provide more than sixty (60) days notice of cancellation of this Agreement, to HUMANA.

Notwithstanding anything to the contrary herein, any change (including any addition and/or deletion) to any provision or provisions of this Agreement that is required by duly enacted federal or Florida legislation, or by a regulation or rule finally imposed by a regulatory agency pursuant to such legislation, rule or regulation, will be deemed to be part of this Agreement without further action required to be taken by either party to amend this Agreement to effect such change or changes, for as long as such legislation, regulation or rule is in effect.

**IPA-SR-FL/5-98**                                                                                           **F2**

EX12 BtsPg 80

# INDEPENDENT PRACTICE ASSOCIATION PARTICIPATION AGREEMENT

## ATTACHMENT G

### CONFLICT OF INTEREST DISCLOSURE FORM

**IPA OR PRINCIPALS:** ___TRANSATLANTIC HEALTHCARE, L.L.C.___
**(Must be identical to the name shown on the Cover Sheet)**

List names and addresses of any and all Competitive Plans in which IPA or IPA Physicians have an interest in, as described in Article 29 of this Agreement.

**Name**_____

**Address**_____


**Name**_____

**Address**_____


**Name**_____

**Address**_____


**Name**_____

**Address**_____


**Name**_____

**Address**_____


**Notify Humana of any change in this statement.**


**IPA-SR-FL/5-98**                                                  **G1**

EX12 BtsPg 81

BATES PAGE 81

# INDEPENDENT PRACTICE ASSOCIATION PARTICIPATION AGREEMENT

## ATTACHMENT H

### IPA PHYSICIAN LETTER OF AGREEMENT

The attached IPA Physician Letter of Agreement is hereby incorporated into the Agreement.

EX12 BtsPg 82

BATES PAGE 82