**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

TRANSATLANTIC, LLC,

Plaintiff,

v. Case No.: 8:13-CV-1925-T-17TBM

HUMANA, INC., et al.,

Defendants.

_____________________________/

**ORDER**

This cause is before the Court on Defendants' Motion to Dismiss Second Amended Complaint, (Doc. # 53), filed October 21, 2013, and Plaintiff's Memorandum in Opposition, (Doc. # 58), filed November 14, 2013. For the reasons that follow, the Defendants' Motion to Dismiss is **granted in part**.

**BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff filed its Second Amended Complaint on September 24, 2013. (Doc. # 44). The Second Amended Complaint includes the following causes of action:

| | |
|---|---|
| Count I | Racketeering Claim I Under 18 U.S.C. Sec. 1962(a) |
| Count II | Racketeering Claim II Under 18 U.S.C. Sec. 1962(b) |
| Count III | Racketeering Claim III Under 18 U.S.C. Sec. 1962(c) |
| Count IV | Racketeering Claim IV Under 18 U.S.C. Sec. 1962(d) |
| Count V | Declaratory Judgment |
| Count VI | Accounting |
| Count VII | Breach of Contract |
| Count VIII | Interference with Contract and Economic Opportunity |
| Count IX | Injunctive Relief |

(Doc. # 44). Defendants collectively move to dismiss the Second Amended Complaint with prejudice, alleging, among other arguments, that Plaintiff "abus[ed] the RICO causes

of action by asserting frivolous RICO claims" in an attempt to reclassify a breach of contract case into a $45 million RICO claim, but failed to do so with the sufficient degree of specificity required under the law. (Doc. # 53). Plaintiff Transatlantic, LLC, opposes Defendants' Motion to Dismiss, and contends it has met all legal requirements for each cause of action, RICO or otherwise, against the collective Defendants for withholding funds and not following appropriate procedures for outstanding obligations. (Doc. # 58).

## STANDARD OF REVIEW

### A. Fed. R. Civ. P. 12(b)(6)

"Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." "[D]etailed factual allegations" are not required, Bell Atlantic v. Twombly, 550 U.S. 544, 555 (2007), but the Rule does call for sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face," Id. at 570. A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id. at 556. Two working principles underlie Twombly. First, the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements. Id. at 555. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense. Id. at 556. A court considering a motion to dismiss may begin by identifying allegations that, because they are mere conclusions, are not entitled to the

assumption of truth. While legal conclusions can provide the complaint's framework, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. See Ashcroft v. Iqbal, 129 S.Ct. 1937, 1955–1956 (2009) (quoting Bell Atlantic v. Twombly, 550 U.S. 544 (2007)).

**B. Fed. R. Civ. P. 9(b)**

Rule 9(b) requires fraud allegations to be plead "with particularity." "In a complaint subject to Rule 9(b)'s particularity requirement, plaintiffs retain the dual burden of providing sufficient particularity as to the fraud while maintaining a sense of brevity and clarity in the drafting of the claim, in accord with Rule 8." Wagner v. First Horizon Pharm. Corp., 464 F.3d 1273, 1278 (11th Cir. 2006). "Particularity means that a plaintiff must plead facts as to time, place and substance of the defendant's alleged fraud, specifically the details of the defendant's allegedly fraudulent acts, when they occurred, and who engaged in them." United States v. McInteer, 470 F.3d 1350, 1357 (11th Cir. 2006). See also Ziemba v. Cascade Intl., Inc., 256 F.3d 1194, 1202 (11th Cir. 2001) (citation omitted); Garfield v. NDC Health Corp., 466 F.3d 1255, 1262 (11th Cir. 2006). "This means the who, what, when, where, and how: the first paragraph of any newspaper story." Garfield, 466 F.3d at 1262 (citations omitted). "Failure to satisfy Rule 9(b) is a ground for dismissal of a complaint." Corsello v. Lincare, Inc., 428 F.3d 1008, 1012 (11th Cir. 2005), cert. denied, 127 S. Ct. 42, 166 L. Ed. 2d 18 (2006).

**C. RICO - Fraud**

To satisfy the Rule 9(b) standard, RICO complaints premised on fraud must allege: (1) the precise statements, documents, or misrepresentations made; (2) the time and place of and person responsible for the statement; (3) the content and manner in which the statements misled the plaintiffs; and (4) what the defendants gained by the alleged fraud. Brooks v. Blue Cross and Blue Shield of Florida, Inc., 116 F.3d 1364, 1380–81 (11th Cir. 1997). A complaint does not meet the Rule 9(b) particularity standard where it is devoid of specific allegations as to each defendant; in a case involving multiple defendants...the complaint should inform each defendant of the nature of his alleged participation in the fraud. Id. at 1317.

**D. Shotgun Pleading**

Generally speaking, shotgun pleadings "are those that incorporate every antecedent allegation by reference into each subsequent claim for relief or affirmative defense." Wagner v. First Horizon Pharmaceutical, Inc., 464 F.3d 1273, 1279 (11th Cir. 2006). Shotgun complaints invariably begin with a long list of general allegations, most of which are immaterial to most of the claims for relief. District courts have the power and the duty to define the issues at the earliest stages of litigation. Johnson Enterprises of Jacksonville, Inc. v. FPL Group, Inc., 162 F.3d 1290, 1333 (11th Cir. 1998).

Under the Federal Rules of Civil Procedure, a defendant faced with a shotgun complaint is not expected to frame a responsive pleading. Rather, the defendant is expected to move, pursuant to Rule 12(e), to require the plaintiff to file a more definite statement. Anderson v. Board of Trustees of Central Florida Community College, 77 F.3d

364, 366 (11th Cir. 1996). If, in the face of a shotgun complaint, the defendant does not move the district court to require a more definite statement, the court, in the exercise of its inherent power, must intervene sua sponte and order a repleader. Byrne v. Nezhat, 261 F.3d 1075, 1133 (11th Cir. 2001). This duty to intervene sua sponte applies whether the court is faced with a shotgun complaint or a shotgun answer. Id. at 1133, n.114. Shotgun pleadings, if tolerated, harm the court by impeding its ability to administer justice. The time a court spends managing litigation framed by shotgun pleadings should be devoted to other cases waiting to be heard. Wasting scarce judicial and parajudicial resources impedes the due administration of justice and, in a very real sense, amounts to obstruction of justice. Byrne v. Nezhat, 261 F.3d 1075, 1131 (11th Cir. 2001) (internal quotation omitted). See also Davis v. Coca-Cola Bottling Co. Consol., 516 F.3d 955, 979 n. 4 (11th Cir. 2008)(collecting cases).

## DISCUSSION

### A. Shotgun Pleading

Plaintiff has included 183 factual allegations in the Second Amended Complaint (37 pages). Each allegation is incorporated in each Count of the Second Amended Complaint. For this reason alone, the Court dismisses the Second Amended Complaint without prejudice, and will permit one further opportunity to file an amended complaint which complies with the Federal Rules of Civil Procedure. Each separate claim that Plaintiff asserts shall incorporate only the factual allegations on which each claim is based.

**B. Racketeering (Counts I–IV)**

**1. RICO and Breach of Contract for Counts I–II [18 U.S.C. §§ 1962(a)–(b)]**

Defendants first argue Plaintiff's RICO claims are an attempt to convert ordinary breach of contract claims into racketeering claims, and that this conversion is impermissible. (Doc. # 53). Plaintiff opposes this argument, and contends while the RICO counts may sound from breach of contract, that remedy is not exclusive. (Doc. # 58).

While RICO was not enacted to allow plaintiffs to recast simple breach of contract claims as federal cases, Robert Suris General Contractor Corp. v. New Metro. Fed. Sav. & Loan Assoc., 873 F.2d 1401, 1404 (11th Cir. 1989), there is no per se rule that a plaintiff must exhaust a breach of contract claim before her RICO claim is ripe, nor is there a per se rule to the contrary. Liquidation Com'n of Banco Intercontinental, S.A. v. Renta, 530 F.3d 1339, 1351 (11th Cir. 2008). At this stage of the pleadings the Court is required to strike all conclusory statements and cast all factual allegations in a light most favorable to the non-moving party, and, if there exists a plausible cause of action, dismissal is inappropriate. At this stage, Defendants' insistence that Plaintiff's claims sound in contract does not, per se, preclude Plaintiff's causes of action in RICO.

**2. Required Specificity for Counts I–II [18 U.S.C. §§ 1962(a)–(b)]**

Defendants further argue Plaintiff has not pleaded the RICO claims with the specificity and particularity that Federal Rule of Civil Procedure 9(b) requires; Defendants argue the Second Amended Complaint is full of conclusory statements and devoid of any alleged time, place, and content with respect to the scheme to defraud. Plaintiff opposes

this argument, and contends that while RICO claims not sounding in fraud need not meet the Rule 9(b) requirements, Plaintiff has nonetheless met the requirement.

The Court finds Plaintiff pled its Second Amended Complaint with the required level of specificity and particularity required at the dismissal stage of litigation with respect to factual allegations for RICO. Plaintiff described Defendants' practice of withholding or down-coding funds, not accounting for the delay in payments, and paying managers with the interest earned on these withheld or down-coded funds. (Doc. # 44, ¶¶45–67). Further, Plaintiff described the alleged "sham" corrective plan that resulted in Plaintiff's termination. (Doc. # 44, ¶¶85–91). Additionally, Plaintiff described the alleged manipulation of past relationships between Defendants' and Plaintiff's executives and employees, resulting in a coerced termination of the relationship between Plaintiff and Defendants. (Doc. # 44, ¶¶92–109). Moreover, Plaintiff alleged Defendants employed a false or illusory appellate process, through which it refused to consider any appellate review, (Doc. # 44, ¶¶110–121), as well as an alleged a conflict of interest when Defendant Humana's subsidiary ContinueCare sought the business to which Plaintiff was originally entitled after Defendant terminated Plaintiff's contracts through a mutual consent. (Doc. # 44, ¶¶122–141). Finally, Plaintiff provided specific statements and misrepresentations—namely, Defendants' failure to account for withheld funds during the pendency of payments; dates and people responsible; content that misled Plaintiff; and Defendants' financial gain therefrom. (Doc. # 44, ¶¶ 151–181). These allegations provide sufficiently pled facts that, when analyzed in a light most favorable to Plaintiff, present a plausible cause of action to which Plaintiff could be entitled to relief.

While the facts, as pled, present a plausible cause of action to which Plaintiff could be entitled to relief, Plaintiff fails, however, to separate the individual Defendants in the RICO causes of action, and rather groups them as a collective "Humana." This impermissible grouping renders the counts deficient, as the misrepresentations and fraudulent activity forms the basis of both fraud and non-fraud claims. See Renta, 530 F.3d at 1355–1356. Therefore, Counts I and II of the Second Amended Complaint are dismissed without prejudice, and Plaintiff may refile on or before October 15, 2014, with specific allegations to each defendant involved in the RICO causes of action, and their interrelationships for RICO, in Counts I and II.

**3. Standing for Counts I–II [18 U.S.C. §§ 1962(a)–(b)]**

Defendants further argue Plaintiff does not have standing to raise claims under Sections 1962(a) and (b). As to Section 1962(a), Defendant argues that Plaintiff does not allege investment of funds or that Plaintiff was injured by the investment. As to Section 1962(b), Defendant argues that Plaintiff does not allege the acquisition of or maintenance of an interest in an enterprise, or that the acquisition caused the injury. Plaintiff responds that it has met the requirements for standing.

Plaintiff has satisfied standing requirements for 18 U.S.C. §§ 1962(a) and (b). While not specific to each Defendant, Plaintiff alleged Defendants' RICO enterprise illegally retained income and proceeds due and owed to Plaintiff, failed to account for the allegedly illegal retention of those proceeds, and the proceeds were then reinvested and the interest and income derived therefrom was used to pay manager incentives. Additionally, Plaintiff alleged Defendant, through a subsidiary ContinuCare, sought to

obtain an interest in Plaintiff's former business after Plaintiff entered into the mutual consent. These facts, taken in a light most favorable to Plaintiff, satisfy the standing requirement, and dismissal for lack of standing is inappropriate.

**4. Requisite Racketeering Activities for Count III [18 U.S.C. § 1962(c)]**

Defendants next argue that Plaintiff has not alleged a plausible claim for relief under Section 1962(c)—Plaintiff has not alleged acts of mail fraud and wire fraud with any degree of particularity; Plaintiff failed to plead scienter; the allegations are nothing more than a failure to pay; and the complaint contains unsupported conclusory allegations that Defendants committed various acts knowingly. Defendants argue there are no allegations of misrepresentations that could constitute fraud, no allegations of the content and manner in which the actions or statements misled Plaintiff, and Plaintiff does not identify any person responsible for any alleged misrepresentations. Defendants further argue that Plaintiff has not alleged a pattern of activity that could amount to continued criminal activity, and there are no allegations regarding an enterprise or the conduct of an enterprise. Plaintiff opposes these arguments, and contends the Second Amended Complaint provides sufficient detail to survive dismissal.

While the Second Amended Complaint alleges sufficient activity to establish RICO causes of action, as with 18 U.S.C. §§ 1962(a) and (b), Plaintiff fails to allege the particular defendants responsible for the particular acts. Plaintiff sufficiently pled the acts of mail fraud on December 1, 2009, and January 1, 2010; scienter was established from Defendants' interest in disbursing bonuses to managers affiliated with the alleged RICO enterprise; Defendants continued to mislead, provide fraudulent bases for withholding the

funds, and failed to provide accounting for pending funds from which Plaintiff alleges interest and income were derived; and Defendants sought to capture business previously conducted with Plaintiff for ContinueCare. However, Plaintiff again fails to provide the specific actions from specific Defendants, as even Renta requires when the misrepresentations form the basis for both fraud and non-fraud claims. See Renta, 530 F.3d at 1355–1356. Therefore, Count III of the Second Amended Complaint is dismissed without prejudice, and Plaintiff may refile on or before October 15, 2014, with specific allegations to each defendant involved in Count III.

**5. Conspiracy Allegations for Count IV [18 U.S.C. § 1962(d)]**

As to RICO conspiracy under Section 1962(d), Defendants argue that: 1) the underlying RICO claims fail as a matter of law and the conspiracy claim contains no new allegations; and 2) Plaintiff does not allege any facts establishing a conspiracy. Defendants argue that Plaintiff makes only conclusory assertions that Defendant and each of its affiliates conspired with each other, and conclusory allegations without substantive factual allegations do not meet the plausibility standard.

Plaintiff fails to meet its burden of specifically and particularly alleging the acts of each Defendant with respect to the conspiracy. Therefore, like with Counts I, II, and III, Count IV of the Second Amended Complaint is dismissed without prejudice, and Plaintiff may refile on or before October 15, 2014, with specific allegations to each defendant involved in Count IV, rather than the "various acts" language contained in the Second Amended Complaint.

**6. Timeliness of Counts I–IV**

Defendants argue that the RICO claims are untimely. The Second Amended Complaint alleges that the injurious act took place "beginning in 2006," and specifies ten separate instances that include: "from during and about 2006 continuing to the present." Defendants argue that for Plaintiff's claims to be timely, Plaintiff must allege that its injuries first occurred after September 11, 2009. Plaintiff vaguely responds, and simply alleges Defendants undertook adverse adjustments around December 1, 2009, (Doc. # 44, ¶¶80, 160), and adverse adjustments in 2010. (Doc. # 44, ¶81). Plaintiff fails, however, to address which Defendant took which action and the interrelation of those actions to the RICO counts and their timeliness. The Court has ruled that Counts I through IV are deficient with respect to particularity and specificity, and allowed Plaintiff to refile a third amended complaint on or before October 15, 2014, addressing the particularity and specificity of each defendant's actions. With this third amended complaint, Plaintiff is additionally ordered to fully brief the timeliness of each RICO count as to each Defendant, addressing Defendants' arguments related to last predicate acts; new and independent injuries not flowing from the time-barred cause of action; and whether injuries need first occur after September 11, 2009, or the injuries from 2006, February 1, 2009, March 1, 2009, or September 1, 2009 are sufficient to survive the statute of limitations. This separate brief shall not exceed ten (10) pages and is due no later than October 24, 2014, and Defendants may file a reply not exceeding five (5) pages no later than November 7, 2014. Should Plaintiff fail to comply with this Order, the Court will rely on the issue as briefed and rule accordingly.

**C. Standing for Declaratory Judgment (Count V) and Accounting (Count VI)**

**1. Private Right of Action**

Defendants argue that Plaintiff does not have a private right of action or standing to bring an action for declaratory judgment that Defendants' actions violate the Medicare Act and regulations, and Humana's Medicare Advantage Contract with CMS. Defendants argue that Congress has not created new rights enforceable under an implied private right of action by asserting the alleged new rights in clear and unambiguous terms. Plaintiff opposes this argument, and contend Defendants' appellate procedure is illusory and the contract was terminated for retaliatory reasons, thus requiring a court to determine the rights to the impounded money.

Counts V and VI of the Second Amended Complaint allege, generally, that the collective defendants "acted with reckless disregards [sic] of its obligations[…];" with intent to defraud the United States; and violated the due care obligations, all under Medicare "provisions and statutes, the Constitution, laws and regulations of the United States of America." (Doc. # 44, ¶¶207–218). Plaintiff fails, however, to identify the specific statutory scheme or framework that Defendants violated, and provide from where the private causes of action arise. Further, Defendants numerous binding and persuasive cases stand for the proposition that merely because a statute was "violated and some person harmed does not automatically give rise to a private cause of action in favor of that person." Cannon v. Univ. of Chicago, 441 U.S. 677, 688 (1979). To determine whether Congress intended to bestow a private remedy, a court must analyze four factors: "1) Is the plaintiff one of the class for whose especial benefit the statute was enacted;

2) Is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one; 3) Is [the remedy] consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff; and 4) is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law." Cannon, 441 U.S. at 688, n. 9 (internal quotation and citations omitted).

Plaintiff failed to address any of these factors, or even identify the laws under which they seek declaratory judgment, aside from generally stating Medicare "provisions and statutes, the Constitution, laws and regulations of the United States of America." (Doc. # 44, ¶¶207–218). Rather, Plaintiff argued Counts V and VI are "ripe" and that, inter alia, Defendants have improperly withheld funds from Plaintiff for a period of time. Without further information regarding the specific statute or private cause of action—or even argument on the matter—this Court is powerless to determine congressional intent of the generalized laws and statutes, including whether Plaintiff would fall into the especial class, Congress intended to create the private cause of action, whether the remedy is consistent with the underlying purposes of the legislative scheme, or whether the cause of action is traditionally relegated to state law. See Cannon, 441 U.S. at 688, n. 9. Absent these contentions, the Court finds persuasive Defendants' argument that the declaratory judgment and accounting actions are duplicative of a claim for breach of contract, and, therefore, Counts V and VI are dismissed without prejudice. Should Plaintiff seek to re-allege these counts through amendment on or before October 15, 2014, Plaintiff shall identify the basis for the private right of action in accord with cited controlling and

persuasive authorities through separate memorandum; otherwise, Plaintiff faces potential dismissal with prejudice for any further sought declaratory judgment or accounting relief.

**2. Standing**

Defendants further argue that, to the extent that claims for declaratory relief and for accounting are based on Defendants' alleged breach of its Medicare Advantage Contract with CMS, Plaintiff is not a party to that contract, and therefore cannot sue Defendants to enforce the terms of Defendants' contract with CMS. Plaintiff does not allege it is a third party beneficiary, nor could it allege Plaintiff is a third party beneficiary. Defendants further argue that, if a claim for declaratory judgment is duplicative of a claim for breach of contract, the claim for declaratory judgment should be dismissed.

Plaintiff responds that Plaintiff alleged that Defendants' appeal procedures are illusory, and without appeals available via contract, Plaintiff is entitled to a declaratory judgment and accounting. Plaintiff further responds that Defendants' immediate termination was unlawful, and constituted a breach of contract. Plaintiff argues an accounting is necessary to determine how much of the withheld funds belong to CMS and how much belongs to Plaintiff Transatlantic and its downstream affiliates; a declaratory judgment would confirm that none of the funds belong to Defendants, and Defendants have no right to possess the funds.

The Court has already ruled Plaintiff failed to demonstrate a private cause of action exists under Medicare "provisions and statutes, the Constitution, laws and regulations of the United States of America," (Doc. # 44, ¶207–218), and the Court dismissed those counts without prejudice. Therefore the issue of standing is currently moot.

**D. Breach of Contract (Count VII)**

Defendants argue that the breach of contract claim should be dismissed; the breach of contact claim fails as a matter of law because the language of the contract contradicts Plaintiff's allegations. Defendants argue that Plaintiff asserts that Defendants allegedly breached the contract by: 1) terminating the contract; and 2) failing to provide certain sums in association with the contract. Defendants argue that the decision to terminate the contract was mutual, the facts pleaded as to the claim of duress are not sufficient, and any claim related to the amount owed is not ripe, as a final reconciliation has not occurred. Plaintiff opposes this argument, and contends the breach arose from bad-faith dealings and coercive actions without an opportunity to confer with counsel.

Plaintiff alleges the breach was in bad faith, as Defendants coerced a corrective action plan ("CAP") and created an illusory appeals process. As Defendants correctly cite, duress requires a plaintiff allege "(1) that one side involuntarily accepted the terms of another, (2) that circumstances permitted no other alternative, and (3) that said circumstances were the result of coercive acts of the opposite party." Woodruff v. TRG-Harbour House, Ltd., 967 So.2d 248 (Fla. 3d DCA 2007).

Plaintiff has pled a plausible claim for duress or coercion. Plaintiff alleged Dr. Latimer, acting on Defendants' behalf, had a prior relationship with Ms. Lari Cummings, one of Plaintiff's employees; Dr. Latimer manipulated and exploited that relationship to convince Ms. Cummings that executing the CAP was in Plaintiff's best interests to avoid "negative implications and appearance" if Defendants terminated the contract for cause; that Plaintiff's employee was not permitted to confer with counsel; and the termination of

the contract was retaliatory in nature. (Doc. # 44, ¶¶105–108). These facts, when analyzed in the light most favorable to the non-moving party—the Plaintiff—create a plausible cause of action for breach of contract resulting from coercion.

Defendants further argue that Plaintiff agreed that the final decisions regarding payment under the contract are made by Humana, and that payments are subject to a final reconciliation which has not yet occurred. The Contract explains funds are to be distributed through the settlement fund procedures set forth in the contract. Plaintiff may contest the distribution amount, and Defendants are required to review the contested issue and respond to the IPA in writing within sixty days of the date of receipt by Humana of the contested issue. Plaintiff does not allege that Plaintiff complied with the procedural requirements for raising a payment dispute, including timely submission of the dispute to Humana, and Plaintiff agreed that Humana's decision. Defendants further argue that the final reconciliation occurs six months after contract termination in March, 2014. Plaintiff contends Defendants' arguments are in bad faith, Defendants breached the contract, and Defendants have created an illusory appeals process in which Plaintiff cannot prevail.

Plaintiff has satisfied the ripeness requirement for amount owed. While Plaintiff agreed to Defendants' determination of moneys owed, Plaintiff pled that Defendants breached the contract, coerced Plaintiff into a CAP, and failed to conduct CAP procedures in good faith, thus nullifying the procedures for appeal with respect to moneys owed. At this stage of litigation Plaintiff's Second Amended Complaint satisfies the pleading standards for a motion to dismiss.

**E. Tortious Interference (Count VIII)**

Defendants argue that Plaintiff's tortious interference claim fails as a matter of law because: 1) Plaintiff's only relationship with the downstream entities is contractual, and Plaintiff does not allege that the contracts were breached; and 2) Defendants' actions were justified and therefore not tortious or unlawful. Plaintiff appears to concede Count VIII is a tortuous interference of contract, (Doc. # 58, p. 19), but further argues the terminations were out of malice and unlawful due to coercion and conflict of interest.

**1. No Allegation of Breach**

Without an alleged breach, the tortious interference claim fails as a matter of law. Johnson v. Elizabeth Wellborn, P.A., 418 Fed. Appx. 809, 815–816 (11th Cir. 2011) (affirming dismissal where amended complaint did not allege that the N. A. C. A. contract was breached). Here, Plaintiff only alleged that the Defendants "intentionally induced some of the downstream entities to terminate their contracts with Plaintiff," resulting in damages to Plaintiff. (Doc. # 44, ¶241) (emphasis added). The Second Amended Complaint does not contain any allegation that these terminations were breaches or natural terminations. Plaintiff failed to properly plead tortious interference with contract, and, therefore, Count VIII of the Second Amended Complaint is dismissed without prejudice. Plaintiff may refile on or before October 15, 2014, with specific allegations of breach and facts related thereto in Count VIII.

**2. No Unlawful Interference or Interference Without Justification**

While Plaintiff is correct that the Second Amended Complaint pleads sufficient facts to overcome Defendants' argument that Defendants' actions were justified and lawful—specifically, that Defendants' actions were unlawful by way of coercion, duress, and conflicts of interest by attempting to recover business to which Plaintiff may have been entitled—the absence of breach renders defective Plaintiff's Second Amended Complaint, and the matter is moot.

**F. Injunctive Relief (Count IX)**

Defendants argue that Plaintiff's claim for injunctive relief is a remedy, not a cause of action, and is duplicative of requests for relief asserted elsewhere in the Second Amended Complaint. Plaintiff responds that Count IX provides notice to Defendants of Plaintiff's request for injunctive relief, in accordance with Fed. R. Civ. P. 65.

In its request for injunctive relief, Plaintiff requests the following:

> 1. A Preliminary and subsequently a Permanent Injunction (a) prohibiting [Defendants] from terminating of [sic] its contract of February 6, 2006, with [Plaintiff]; (b) permitting or otherwise facilitating, encouraging, inciting, [or] causing any actions directly or indirectly involved in the transfer of physician groups and patients from [Plaintiff]; (c) reinstating [Plaintiff's] Medicare Advantage Downstream Physician contracts and prohibiting [Defendants] from approving transfer of [Plaintiff's] Downstream contractors and patients without further order of this Court;
> 2. A Preliminary and subsequently a Permanent Injunction prohibiting [Defendants], any agent, or entity over which [Defendants] exercises control from inciting any employee, agent, contractor, subcontractor, physician group, client or patient of [Plaintiff] or any of its subcontractors to terminate or otherwise lessen or reduce their relationship with [Plaintiff] or its subcontractors;

> 3. A Judgment against and ordering Defendants [] in an amount to be determined by this Court as an equitable judgment, plus interest and the cost of this action based upon an Accounting and such other relief as the Court determines to be appropriate.

(Doc. # 44, pp. 55–56).

An injunction is not a cause of action, but rather a remedy. Sylvester v. GE Capital Retail Bank, 2012 WL 3522691, *4 (M.D. Fla. 2012). "There is no such thing as a suit for a traditional injunction in the abstract. For a traditional injunction to be even theoretically available, a plaintiff must be able to articulate a basis for relief that would withstand scrutiny under Fed.R.Civ.P. 12(b)(6)." Alabama v. U.S. Army Corps of Engineers, 424 F.3d 1117, 1127 (11th Cir. 2005) (citing Klay v. United Healthgroup, Inc., 376 F.3d 1092, 1097 (11th Cir. 2004)). This relief is appropriately requested as a remedy to Plaintiff's remaining cause of action, rather than a separate, individual cause of action. Count IX of Plaintiff's Second Amended Complaint is dismissed with prejudice. Accordingly, it is

**ORDERED** and **ADJUDGED** that Counts I, II, III, IV, V, VI, and VIII are dismissed without prejudice. Plaintiff may refile an amended complaint on or before October 15, 2014, in accord with the Court's previous determination with respect to each count.

It is further **ORDERED** and **ADJUDGED** that Count IX is dismissed with prejudice.

It is further **ORDERED** and **ADJUDGED** that Plaintiff fully brief the timeliness of each RICO count as to each Defendant, addressing Defendants' arguments related to last predicate acts; new and independent injuries not flowing from the time-barred cause of action; and whether injuries need first occur after September 11, 2009, or the injuries from 2006, February 1, 2009, March 1, 2009, or September 1, 2009 are sufficient to

survive the statute of limitations. This separate brief shall not exceed ten (10) pages and is due no later than October 24, 2014, and Defendants may file a reply not exceeding five (5) pages no later than November 7, 2014.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida on this 30th day of September, 2014.




Copies to: All parties and counsel of record